## COMMONWEALTH EX REL. v. HOWARD PERKINS.

[BENNETT C. WILSON v. JOHN W. KEELY.]

WRIT OF HABEAS CORPUS, DIRECTED TO THE SUPERINTENDENT OF PHILADELPHIA COUNTY PRISON.

Argued January 12, 1889—Decided January 28, 1889.

1. If the return to a writ of habeas corpus, issued from the Supreme Court, show that the relator is held under a commitment for contempt from a subordinate court which wholly fails to show the nature of the contempt, the relator may be discharged on the ground of the insufficiency of the commitment.

2. Section 23, act of June 16, 1836, P. L. 793, does not deprive a court of equity having jurisdiction of the parties and the subject-matter, of the power, essential to the existence of the court, to enforce obedience to its orders and decrees, lawfully made, by process of attachment and imprisonment.

3. Where there is involved, in proceedings in equity, the identity of an invention or machine held by the defendant with one claimed by the

plaintiff, an order upon the defendant, before any issue joined, not only to exhibit his machine but to operate it and explain the method of its construction, is improvident and unenforceable by attachment.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 114 January Term 1889, Sup. Ct.; court below, No. 372 September Term 1887, C. P. No. 3.

On November 20, 1888, in vacation, John W. Keely presented before Mr. Justice STERRETT his petition, setting forth in outline certain proceedings upon a bill in equity to the number and term above stated in the Court of Common Pleas No. 3 of Philadelphia county, resulting in the issuance of a warrant for the arrest and commitment of the petitioner, under which he was then held and illegally restrained of his liberty by Howard Perkins, superintendent of the county prison; praying that a writ of habeas corpus might be issued, etc. The writ having been awarded as prayed for, returnable forthwith at chambers, the respondent made return as shown in the opinion of this court, before PAXSON, STERRETT and WILLIAMS, JJ., when the hearing was continued to January 12, 1889, before the court in banc, and the relator admitted to bail.

A writ of certiorari to the court below was then sued out by the relator, on the return whereof the following facts appeared:

On January 3, 1888, Bennett C. Wilson filed a bill in equity against John W. Keely, wherein it was averred that by two instruments of writing dated August 14, and August 31, 1869, respectively, the defendant had formally sold and assigned to the plaintiff a certain principle, invention and machine, described by the defendant as "a certain machine known to myself as the Reacting Vibratory Motor, said machine being independent of any outside appliances to produce the power and motion, viz.: a revolving globe with the necessary connections and appliances, said globe being the centre for the dispensation of said motion and power, and where all the actual power is produced, dependent only on itself for this production and reaction (unlimited);"—the first of said instruments granting and assigning to the plaintiff one full half-ownership of said principle and machine, and all improvements that might thereafter be made on the same, and the

second, the defendant's "whole right and title with all interest in said invention." The bill averred further that in 1872, the defendant told plaintiff that the invention or machine had proved a failure and he had wholly abandoned it, which assurance the defendant had repeated in frequent interviews between 1872 and 1887; that in April, 1887, the plaintiff accidentally saw in the defendant's work-shop the machine now known as the Keely Motor, which he at once recognized as the machine, or an improvement on it, which he had purchased in 1869, and which he had been led to believe by the defendant had been abandoned as worthless; that, since the said assignments to the plaintiff, the defendant had received large sums of money from the exhibition of, and from sales of interests in, said machine, which he had refused to account for. The bill prayed, inter alia:

1. That the defendant be enjoined "from removing the machines or models known as the Keely Motor, and referred to in the assignments hereinbefore named, from the shops or places where the same are now located, and from changing, altering, adding to, taking from, or otherwise varying the construction or mode of operation of the same."

2. That the defendant be enjoined "from selling, assigning or encumbering in any manner the above-named inventions, or either of them."

3. That the defendant be enjoined from making, using or vending "the above-named inventions, or either of them."

4. That the defendant be compelled forthwith "to exhibit to your orator, and permit him to inspect all models, machines, drawings and descriptions in the possession of the defendant, of the invention referred to in the above-named assignments, and known as the Keely Motor, and of all inventions made by the said defendant subsequent to the fourteenth day of August, 1869, upon said original invention or pertaining thereto, and of all improvements thereon, and that said defendant be compelled, by an order of this court, to explain and fully disclose to your orator all of said inventions and the mode of constructing and operating the same."

On the day of filing the bill, a special injunction was awarded, issued, and on the next day served. On January 5, 1888,

notice was served upon defendant that upon Saturday, January 7th, the plaintiff would move for an order compelling defendant " forthwith to exhibit to the complainant, Bennett C. Wilson, and permit him to inspect all models, machines, drawings and descriptions in your possession of the inventions referred to in the assignments set forth in the bill in equity herein, and known as the Keely Motor, and of all improvements thereon made by you subsequent to the fourteenth day of August 1869, and compelling you to explain and disclose the same fully to said complainant, together with the mode of constructing and operating the same." On January 7th, the injunction was " continued until further order of the court."

On February 21, 1888, the defendant demurred to the bill, assigning as causes of demurrer: (1) Insufficient description of the machine; (2) Laches; (3) Multiplicity. On March 16th, the demurrer and the motion for the order of inspection, with various affidavits in support thereof, were argued, and on April 7th, the court, FINLETTER, P. J., filed an opinion, the concluding portion of which was as follows, to wit:

The Keely Motor, if the proofs exhibited are to be relied upon, produces immense power, and the means used are a little air and water. It has also the self-creating reacting power. It would, therefore, seem to have a similarity with the machine of 1869. It is the principle of a machine, and its results, which give character to it, and not its physical conditions. The principle of steam as a motive power is the same, no matter what the form of the machine may be in which or by which it is produced. It is still a steam-engine. And so with electricity, or anything from which power is produced.

It is obvious that in this inquiry the most satisfactory testimony would be that of witnesses who have seen both machines and understand their construction, the means used, and the principle of their operation. The evidence of all others must, in its nature, be useless or misleading. It is enough to say, in this connection, that we cannot regard as satisfactory any of the affidavits presented by the defendant, except his own. He says that his invention termed the Keely Motor, is based on the discovery of a scientific fact made long after he ceased to have any business relation with the complainant, and that the

said discovery, and the apparatus in which it has from time to time been embodied, has not the remotest similitude to or connection with the invention referred to in complainant's bill or the assignments thereto annexed, and that the same was not the outgrowth of any experiments made by the deponent at any time during his association with the defendant, and that the complainant never contributed a dollar directly or indirectly connected therewith.

This is a full and complete denial of the plaintiff's claim, and might be conclusive. The effect, however, which should be given to evidence, may depend upon not only what is averred, but also upon what is unsaid. The defendant has in no way stated what the principle and machine were which he assigned to plaintiff. He is the only one who could give any information upon this subject and enable us to judge correctly between the contradictory statements of the parties. This information would either corroborate him or corroborate the plaintiff. He has withheld it, and he may not complain if we are compelled thereby to draw inferences unfavorable to his assertions.

In this case we find it impossible to determine from the affidavits and arguments of counsel what the principle and machine assigned to plaintiff may be, in construction, operation, or results. We know a little more of the Keely Motor, in this respect, but even that is vague and indefinite. The examination is therefore necessary for an intelligent consideration of the rights of the parties. It may also determine this proceeding; and can be made without injury to the rights of any one interested. We regret that the zeal of counsel has induced reflections upon Mr. Keely, not warranted by the evidence, and not necessary for a proper presentation of their case.

The demurrer is overruled with leave to answer. The order for inspection is allowed; upon the return thereof, the motion to dissolve the special injunction will be determined.

Thereupon, on April 7, 1888, the order for inspection, appointing Charles M. Cresson, Thomas Shaw, Wm. D. Marks and Jacob Naylor, as experts, fully appearing in the opinion of this court, was made.

On May 5, 1888, the Keely Motor Company presented a

petition asserting ownership of the inventions known as the
Keely Motor, and prayed to be made a party to the suit; de-
ferred, but " the said company to have leave to name an expert
to act with the commission named in the order of April 7,
1888." Upon the suggestion of the petitioners, W. Barnet
Levan was appointed.

On July 7, 1888, upon affidavit of plaintiff filed, a rule was
entered upon the defendant to show cause why he should not
be attached for the refusal or failure on his part to obey the
order of April 7th. To this rule the defendant answered, and
various affidavits, exhibits, majority and minority reports of
the experts, were filed, from which it was claimed, on the one side,
that the defendant was in contempt of said order, and on the
other, that he had complied therewith so far as was in his
power. It appeared from some of the papers that, upon the
appointment of the commission, the plaintiff had placed in the
hands of Dr. Cresson, one of the experts, a sealed envelope
containing a particular description of the assigned machine of
1869, which in the order of April 7th, the plaintiff was requir-
ed to give to the said experts to enable them to make the
comparison, which envelope, however, by direction indorsed
by the plaintiff was not to be opened and its contents ex-
amined until after the experts had completed the investigation
of defendant's machine. At a hearing on September 18th,
this envelope was placed in the hands of REED, J., where it
remained unsealed, the rule to show cause being continued.

On October 25, 1888, the defendant entered a rule to show
cause why the injunction should not be dissolved, and the
same day a rule to have the plaintiff's sealed statement opened
and submitted to counsel. Various reports, exhibits and affi-
davits were filed. On November 10th, on hearing, the rules
to dissolve the special injunction, and to have complainant's
sealed description opened and submitted, were denied, and the
rule for attachment against the defendant was made absolute.

On November 17, 1888, formal orders were entered adjudg-
ing the defendant to be in contempt for disobedience of the
order of April 7, 1888, and directing the issuance of an attach-
ment returnable forthwith. The same day the defendant
presented himself at the bar of the court, and, opportunity
being given to purge himself from the adjudged contempt,

filed a long statement verified by affidavit, setting forth all the proceedings of the experts in their investigations; the refusal of Dr. Cresson to open the plaintiff's sealed description and submit the same to the commission of which he was chairman; the submission by the defendant to the commission of all the parts of his machine and the drawings and specifications from which the same were made; the inability of the defendant to put a portion of the machine into an operative condition without an expenditure of money which he could not supply; the averment that one of the experts upon the commission had denounced the defendant and his invention for years, and that another in a more qualified manner had derided it; the defendant, therefore, disclaiming all contempt or disobedience of the process, of the court, etc. Thereupon the court, FINLETTER, P. J., made the following order:

" And now, November 17, 1888, the said respondent, John W. Keely having been brought into court by the attachment issued in these proceedings, and having been required by the court to purge himself of the contempt of which he is convict, or show cause why he should not be further dealt with as to the court may appear proper; and the said John W. Keely not having purged himself of said contempt, and not having shown cause why he should not be further dealt with, after hearing the said John W. Keely, and upon full consideration, it is decreed and adjudged that for the said contempt the said John W. Keely shall be committed to the county prison, to be there kept and confined in custody until he shall have purged himself of said contempt, and until he shall have been legally discharged from said contempt."

The commitment shown in the return to the writ of habeas corpus having been issued and executed, the petition upon which this cause was instituted was filed, and on the return of the record upon the writ of certiorari, the petitioner specified that the court erred:

1. In ordering the defendant to exhibit and explain an invention to persons having no relation to the action nor to the orderly administration of justice in the case, the title to which invention was in suit.

2. In making any such order before answer filed or any issue in fact was joined between the complainant and the defendant.

3. In deciding as matter of fact that the defendant disobeyed its order.

4. In deciding, either as matter of fact or of law, that the defendant was guilty of contempt of court.

5. In committing the defendant to prison for alleged contempt.

*Mr. Wayne MacVeagh* (with him *Mr. Chas. B. Collier* and *Mr. J. Joseph Murphy*), for the petitioner:

This case is brought before this court by habeas corpus and certiorari, in accordance with the practice indicated and established in Hummell and Bishoff, 9 W. 416, and in Commonwealth v. Newton, 1 Gr. 453, wherein it was held that this court possesses a superintending jurisdiction over the proceedings of Courts of Common Pleas to punish for contempt, to see that they have not overstepped their jurisdiction and exercised their summary power in a case not warranted by the laws.

I. The commitment was illegal, because made for alleged disobedience of an extra-jurisdictional and void order of the court.

1. The power to punish contempts, without the intervention of a jury, is inherent in every court, and extends to the enforcement of every order which, in the legitimate exercise of its authority it may make; but it does not extend to orders made without authority or jurisdiction: Ex parte Grace, 12 Ia. 208; Brown v. Moore, 61 Cal. 432; People v. Brennan, 45 Barb. 344, 347. Upon the mere prayer of the plaintiff embodied in his bill, the court proceeded to order what amounted to the presentation of evidence on the part of the plaintiff. The defendant was practically called as a witness for the plaintiff, being required to exhibit and explain the machine which is the subject of the suit, disclosing his case out of court, not under oath or before any person authorized to take testimony, and before he had an opportunity of stating it by the filing of an answer. Such a proceeding is extra-jurisdictional, and therefore illegal; opposed to the recognized course of legal procedure, and is not " due process of law;" culminating as it did in the imprisonment of the defendant, it contravenes the constitutional inhibitions for the protection of the liberty of the citizen: Section 9, article I., constitution of Pennsylvania;

Amendment XIV., constitution of the United States ; Fetter v. Wilt, 46 Pa. 457 ; Murray v. Improvement Co., 18 How. 272, 280 ; Walker v. Sauvinet, 92 U. S. 90, 93 ; Hagar v. Reclamation District, 111 U. S. 701, 708; Westervelt v. Gregg, 12 N. Y. 209 (62 Amer. D. 160).

2. It is a practice as old as courts of equity themselves, that before proofs are taken an answer shall be filed and regular issues of fact established. It is the rule at law, also, that no proofs can be taken before the case is at issue. Under Equity Rule, § 37, the only occasion where the right to answer may not be insisted on, is where the court is of the opinion that the demurrer was put in for delay. And even on bills of discovery, before discovery can be had, or an order for the production of documents made, an answer is always filed. Inspection is never allowed until after answer, for until then it is not known whether there is a right of inspection. The court makes interlocutory orders for the production of documents only upon two principles, security pending litigation and discovery for the purposes of the suit: Lingen v. Simpson, 6 Mad. 290 ; Lady Breresford v. Driver, 14 Beav. 387 ; Werne v. Berners, 1 Phila. 482 ; Perry v. Kinley, 1 Phila. 505 ; Wigram on Discovery, 21, 22; Story, Eq. J., § 1490, n. 3. Moreover, the court required the construction and explanation of the machine, before the plaintiff had shown what it was or in any way described it. The plaintiff must establish his right to the subject matter of the suit, before he is entitled to discovery: Portuondo v. Faunce, 9 W. N. 539; Iowa v. Start, 7 Ia. 501 ; Public Works v. Columbia College, 17 Wal. 530; Ex parte Hardy, 68 Ala. 335.

II. The commitment was illegal, because the offence, if at all punishable, was not punishable with imprisonment.

1. There is no power in our courts to commit for contempt, other than that authorized by § 23, act of June 16, 1836, P. L. 793 ; Commonwealth v. Roberts, 2 Clark 340, 345. No implication and no fancied necessity can be permitted to add to the literal meaning of the words by which the legislature has restricted this power: Rutherford v. Holmes, 5 Hun 317, 319. Under the statute recited, the only contempts punishable with imprisonment are those committed in open court.

III. The commitment was illegal, because there was in fact no disobedience of the court's order.

Arguments.

1. An order of court is complied with when the respondent has done all in his power to comply with it. An implied proviso annexed to every order of court is, that it can be performed. The defendant protested that he had explained his machine to the best of his ability, and yet, because a majority of a body of strangers did not understand his explanation, he is committed to imprisonment. When a person charged with a constructive contempt, answers to a rule that the matters alleged against him are not true and sets out a state of facts consistent with his innocence and that there was no intention to interfere with the process of the court, he is to be discharged; and it is error for the court to proceed and hear evidence of the truth of the original affidavit and the falsity of the answer: Burk v. State, 47 Ind. 528.

2. It is true, the courts have large discretion in the matter of judging contempts of their orders. But no court can arbitrarily make that possible, which is impossible. "The judicial department has no will in any case. Judicial power, as contradistinguished from the power of the law, has no existence. Courts are the mere instruments of the law, and can will nothing. When they are said to exercise discretion, it is a mere legal discretion; a discretion to be exercised in discerning the course prescribed by law, and when that is discerned it is the duty of the court to follow it. Judicial power is never exercised for the purpose of giving effect to the will of the judge, but always for the purpose of giving effect to the will of the legislature; or, in other words, to the will of the law:" Chief Justice MARSHALL, in Osborn v. Bank of the United States, 9 Wheat. 738.

*Mr. Rufus E. Shapley* (with him *Mr. W. C. Strawbridge, Mr. J. Bonsall Taylor* and *Mr. A. S. L. Shields*), for the plaintiff below:

A glance at the bill will show that the court certainly had jurisdiction in the premises, for it alleges a title in the plaintiff to an unpatented machine or invention, prays for an injunction and account and the specific performance of an agreement assigning to plaintiff, not only the machine or invention, but all the improvements thereon. The only question, therefore, properly brought before this court, is as to the regularity of the proceedings as they appear of record.

1. The record will show that the proceedings were entirely regular and according to due process of law, there being " actor, reus, judex, regular allegations, opportunity to answer, and a trial according to some settled course of judicial proceeding : " Murray v. Improvement Co., 18 How. 272, 280. The defendant demurred to the bill, thereby admitting all its allegations, which, as he never filed an answer, are still to be taken as admitted upon the pleadings. He at the same time moved to dissolve the preliminary injunction which had previously been granted and continued upon sufficient affidavits. Though the plaintiff had moved for an order to inspect, to enable him to call skilled witnesses to testify as to the identity of the two machines, the defendant became, at this stage, the actor on his own application for relief from a lawful decree of the court.

2. The order in this case simply required the defendant to exhibit and explain to examiners selected by the court, a machine which, by his motion to dissolve the injunction and by his affidavits, he had at that time brought to the attention of the court, which was thereby within the control of the court, and, theoretically, in the court room. In such a case as the present, the technical knowledge necessary could be obtained by a court only through a commission such as was appointed. The action of the court in making the order of inspection is sustained by precedents, and the authorities in support of the power of a court of equity to make such an order are neither few nor doubtful: Flight v. Robinson, 8 Beav. 22, 34; Kerr on Discovery, 1, 2, 165, 277; Earl of Lonsdale v. Curwen, 3 Bligh 168; Kynaston v. East India Co., 3 Swan. 261; Barlow v. Bailey, 18 Week. R. 783; Singer Mfg. Co. v. Wilson, 13 Week. R. 560; Morgan v. Seaward, 1 Web. 169; Patent Type Foundry Co. v. Walter, Johns. 727.

3. At common law, the authority to issue attachments for contempt was inherent in courts of justice, and the power was expressly confirmed by Magna Charta: 4 Bl. Com. 286. Did the act of 1836 repeal this common law power? This was fully considered in Tome's App., 50 Pa. 298, in which it was said: "Whatever may be the criminal nature of the disobedience which brought him into contempt, the attachment in this case partakes of the nature of a civil remedy to enforce obedience to the decree, not merely to punish for contempt." This

case, and Commonwealth v. Reed, 59 Pa. 429, seem to be conclusive upon the question.

4. Is the question of fact to be re-tried by this court upon the record before it? "The object of the removal is not to inquire into the merits of the case, but to ascertain whether the court had jurisdiction and exercised it according to law:" Hummel and Bishoff, 9 W. 431. Proceedings for contempt are not reviewed by this court on their merits: Commonwealth v. Newton, 1 Gr. 454; In re Kensington etc. Turnpike Co., 97 Pa. 268. But did the defendant ever intend to attempt to comply with the order? Let the record answer.

## WRIT OF HABEAS CORPUS.

OPINION, MR. CHIEF JUSTICE PAXSON:

This was a writ of habeas corpus. The relator complains that he is unlawfully restrained of his liberty by the keeper of the Philadelphia county prison. The respondent makes return that he holds the relator by virtue of the following commitment:

"Be it remembered, that on the 17th day of November, 1888, on motion of ———— ————, Esquire, the court ordered: And now the said John W. Keely having been brought into court, by the attachment issued in these proceedings, and having been required by the court to purge himself of the contempt of which he is convict, or show cause why he should not be further dealt with as to the court may appear proper, and the said John W. Keely not having purged himself of said contempt, and not having shown cause why he should not be further dealt with: After hearing the said John W. Keely, and after full consideration, it is decreed and adjudged, that for the said contempt the said John W. Keely shall be committed to the county prison, to be there kept and confined in custody until he shall have purged himself of said contempt, and until he shall have been legally discharged from said custody."

Upon the presentation of the petition, with a copy of said commitment, to Justice STERRETT, in vacation, he allowed the writ returnable before him at chambers. Upon the return of the writ the hearing was continued to the 12th of January, before the court in banc, and the relator was admitted to bail in the meantime. This was the course pursued in Common-

wealth ex rel. Torrey v. Ketner, 92 Pa. 372. See also Hummell and Bishoff, 9 W. 416; Commonwealth v. Newton, 1 Gr. 453.

We might well discharge the relator upon the insufficiency of the commitment. It is not only vague, but it wholly fails to show the nature of the contempt for which he was committed. As we do not review such cases upon the merits, and only inquire into them so far as to ascertain whether the court had the jurisdiction or power to make the order, it is manifest that in many instances the parties would be remediless unless the commitment sets forth such facts as show jurisdiction. We are not asked, however, to decide this case upon technical grounds.

A certiorari having been issued to the court below, we have before us the record of the case of Wilson v. Keely, and from it we learn that the alleged contempt consisted in a refusal to obey an interlocutory order. If the court had the power to make the order, we have no doubt it possessed the power to enforce it by attachment, and, if necessary, by imprisonment. It is true, under the act of June 16, 1836, the punishment of imprisonment for contempt is limited to such contempts as shall be committed in open court. It is also true that obedience to the lawful process of the court may be enforced by attachment. Imprisonment for contempt committed in open court is imposed as a punishment, and is for a definite period. Imprisonment for disobedience to the process of the court is not so much for a punishment as to enforce such process, and ceases the moment the party purges himself of his contempt by obedience. The power in both instances is essential to the existence of the court. A court that has not the power to protect itself from public insult, or to compel obedience to its lawful process, would be beneath contempt. As to the authority of the court to enforce obedience to its process by attachment, I refer to Tome's App., 50 Pa. 285; Commonwealth v. Reed, 59 Pa. 425, in which the subject is fully discussed.

If the court below had jurisdiction of the parties and the subject matter, and the order in question was lawfully made, it possessed the power to enforce it by attachment. It is almost needless to say that the converse of this proposition is equally true. This involves a brief examination of the nature of the proceedings.

Bennett C. Wilson filed his bill in the court below against John W. Keely, claiming to be the assignee of said Keely of a certain principle or machine known (by Keely) as a reacting vibrating machine, "being an independent motor or self-acting, having a revolving globe and other appliances, the said globe being the centre for the dispensation of said motor and power, and where all the actual power is produced, dependent only on itself for this production and reaction unlimited." The bill avers that since said assignment the defendant has received divers large sums of money from the exhibition of, and sale of interests in, and from the unlawful use of, said invention, and prays discovery relative thereto; that the defendant has neglected and refused to permit complainant "to have access to and examine the drawings, models, and machines embodying the invention referred to in the assignment hereinbefore named in the possession and under the control of said defendant;" that complainant believes that the defendant, unless restrained by an order of this court, will sell and assign said invention to others, and dismantle and alter said motor. The prayers for relief, briefly stated, are, that the defendant be enjoined from removing the machines or models known as the Keely Motor, from the shops where the same are now located; from selling, assigning, or using the same; and particularly that the defendant be compelled to forthwith "exhibit to your orator, and permit him to inspect all models, machines, drawings, and descriptions in the possession of the defendant, of the invention referred to in the above named assignments, and known as the Keely Motor."

Upon the filing of the bill the court below granted an ex parte injunction, which was afterwards continued until the further order of the court. A demurrer was filed by the defendant, which appears to have been overruled, with leave to answer over; a commission of experts was appointed to examine the machine, who reported to the court, on October 20, 1888; a rule for an attachment against the defendant was granted, on October 24, 1888, and upon the 25th of the same month the defendant took a rule to dissolve the injunction. I have referred to only a few of the docket entries; they are very numerous, and indicate an especially active and hostile litigation, culminating November 17, 1888, in the commitment

of the defendant to the county prison for contempt. The said commitment was based upon disobedience to the order of court of April 7, 1888. This order was as follows:

"And now, April 7, 1888, in accordance with the opinion heretofore filed in this case, it is hereby ordered by the court that the defendant, the said John W. Keely, shall within thirty days exhibit to the said plaintiff, his attorneys, and to Charles M. Cresson, Thomas Shaw, Prof. Wm. D. Marks, and Jacob Naylor, Esq., who are hereby appointed by the court as experts, the inventions, machines, or devices referred to in the plaintiff's bill, and now known as the Keely Motor, and shall then and there in their presence operate the same or cause them to be operated, and explain the mode of constructing and operating to them. And the said experts are hereby authorized and directed to make such an examination of said machines as will enable them to inform the court as to their identity in construction, principle, or operation with the invention described in the complainant's bill as having been assigned him in 1869 by the respondent, the said complainant giving the said experts such a particular description of the last mentioned invention as may be necessary to enable the comparison to be made; and the said experts shall further make such drawings of the machine known as the Keely Motor as they may consider necessary for the information of the court, and report jointly or severally; and it is further ordered that the information obtained by this inspection by the complainant and his counsel, or by the said experts, shall not be used for any other purpose than for the proper hearing and adjudication of the present proceeding."

At the time this order was made the cause was not at issue. No answer had been filed, and, of course, there was no examiner or master. At this stage no legal testimony could have been taken. The plaintiff had obtained his special injunction, which was duly continued within the five days. There was then no further step which the plaintiff could properly take, except to put the case at issue. After issue joined, an examiner could have been appointed and the proofs taken in an orderly manner. Instead of so proceeding, a commission of experts was appointed to examine the defendant's machine, and the order of April 7th was made by which the defendant,

in advance of any issue, was not only required to exhibit his machine, but also to operate it, and to explain the mode of its construction and operation, although it clearly appeared that it would require considerable expense to clean the machine, put it together, and operate it. The defendant appears to have been willing to exhibit it, and in point of fact did so. In view of this I have not considered it necessary to review the authorities upon the question of the power of the court to compel him to exhibit his machine before issue joined. That he might have been compelled to do so at a proper stage of the cause, is conceded. But to make an order not only to exhibit, but to operate it, the practical effect of which was to wring from him his defence in advance of any issue joined, was an excessive and improvident exercise of chancery powers. It is the more remarkable from the fact that the plaintiff's case, as shown by the exhibits and drawings, was sealed up in an envelope and retained by the court, access to the same being not only denied to the defendant, but even to the experts appointed by the court.

It is not necessary to discuss the question how far the motion to dissolve the injunction justified these proceedings. Upon that motion the defendant was the actor, and if his affidavits failed to satisfy the court that the injunction should be dissolved his motion would necessarily fall. Aside from this the motion to dissolve was made more than three months after the order of April 7th, as appears by the docket entries.

We are of opinion that the order referred to was improvidently made. It follows that the learned court had no power to enforce it by attachment.

The relator is discharged.

Concurring Opinion, Mr. Justice Mitchell:

It was stated without challenge at the argument that the relator had made a motion to dissolve the injunction, before the order of April 7, 1888, and the concluding sentence of the opinion of the learned president of the court below indicates that such was the fact, and that the order was made with special reference to a hearing on that motion.

If that fact were before us I should be of opinion that the inspection directed by the order was within the regular powers

of a court of equity, especially where it was concurred in by the relator himself for several months, nominally complied with, and not objected to until he found it was to be a real examination which was to bring his discovery to a genuine test before a competent mechanical tribunal.

But the record unfortunately does not show any application to dissolve the injunction until October 25th, several months after the order for inspection; and, as on a hearing of this kind, we can review only the regularity of the proceedings upon their face, we are bound by the dates as they appear on the record.

Upon this ground I concur in the opinion of the court that the order for inspection was premature, and the commitment for contempt in not obeying it was therefore improvidently issued.

WRIT OF CERTIORARI.

OPINION, MR. CHIEF JUSTICE PAXSON:

For the reasons given in Commonwealth ex relatione John W. Keely v. The Superintendent of the Philadelphia County Prison, just decided, the order of the court below of date of November 17, 1888, committing the said John W. Keely to the county prison, for contempt, is reversed and set aside.