## Commonwealth *v.* Cameron, Appellant.

*Criminal law—Constitutional law—Evidence—Compulsory self incrimination—Constitution of Pennsylvania, art. III, sec. 32.*

1. Exemption from compulsory self incrimination is not a natural right, nor is it a right secured by the federal constitution which a state constitution can neither take away nor abridge.

2. The words of sec. 32 of art. III of the constitution: "Such testimony shall not afterwards be used against him in any judicial proceeding," do not confer on the witness an immunity from prosecution for an offense relative to which he has been compelled to testify.

Argued Oct. 17, 1910. Appeal, No. 95, Oct. T., 1910, by defendant, from judgment of the Superior Court, April T., 1910, No. 36, affirming judgment and reversing sentence of Q. S. Allegheny Co., Dec. Sess., 1906, No. 585, on verdict of guilty in case of Commonwealth v. Charles S. Cameron. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Indictment under sec. 9 of the Act of May 23, 1874, P. L. 230, for offering a bribe to a councilman. Before VAN SWEARINGEN, J.

At the trial the jury returned a verdict of guilty, upon which judgment of sentence was passed.

RICE, P. J., filed the following opinion:

If sec. 32, art. III, of the constitution were merely an act of the legislature, and not a constitutional provision, a question open to discussion would be whether it supplied a complete protection from all the consequences against which the constitutional prohibition of compulsory self incrimination was designed to guard, and, therefore, whether the appellant could have been compelled to give the incriminating testimony referred to in his special plea in bar. The question of the sufficiency of a statutory immunity to save the statute from conflict with the constitutional prohibition has been learnedly and elaborately

discussed in many cases cited and reviewed in the opinion of the learned judge below and in the briefs of counsel, but it is not the precise question upon which this case turns. No one pretends that sec. 32, art. III, is not valid and enforceable, and could not do so without ignoring or denying effect to the decisions in Com. v. Gibbons, 9 Pa. Superior Ct. 527, affirmed on appeal in Kelly's Contested Election, 200 Pa. 430, and without asserting also that exemption from compulsory self incrimination is a natural right, or a right secured by the federal constitution, which a state constitution can neither take away nor abridge— a position which is not sustained by principle or authority. In the celebrated case of Counselman v. Hitchcock, 142 U. S. 547, the distinction between a legislative and a constitutional impairment of the privilege was distinctly recognized, for the court said: "Legislation cannot detract from the privilege afforded by the Constitution. It would be quite another thing if the Constitution had provided that no person shall be compelled in any criminal case to be a witness against himself, unless it should be provided by statute that criminal evidence extracted from a witness against his will should not be used against him. But a mere act of Congress cannot amend the Constitution, even if it should engraft thereon such a proviso." Still more emphatic is the utterance of the supreme court of the United States in Twining v. New Jersey, 211 U. S. 78: "Even if the historical meaning of due process of law and the decisions of this court did not exclude the privilege from it, it would be going far to rate it as an immutable principle of justice which is the inalienable possession of every citizen of a free government. Salutary as the principle may seem to the great majority, it cannot be ranked with the right to hearing before condemnation, the immunity from arbitrary power not acting by general laws, and the inviolability of private property. The wisdom of the exemption has never been universally assented to since the days of Bentham; many doubt it to-day, and it is best defended not as an unchangeable principle of

universal justice, but as a law proved by experience to be expedient. It has no place in the jurisdiction of civilized and free countries outside the domain of the common law, and it is nowhere observed among our own people in the search for truth outside the administration of the law. It should, must, and will be rigidly observed where it is secured by specific constitutional safeguards, but there is nothing in it which gives it a sanctity above and before constitutions themselves." As there is nothing in the right or privilege which gives it sanctity above and before constitutions themselves, the question before us must turn on the construction of the constitutional provisions contained in sec. 9, art. I, and sec. 32, art. III. We are not disposed to accept unqualifiedly the construction of the former, which would restrict the words "the accused cannot be compelled to give evidence against himself" to the accused then upon trial: Horstman v. Kaufman, 97 Pa. 147; Counselman v. Hitchcock, 142 U. S. 547. Without entering into an elaborate discussion of the scope of that section, we assume that were it not for sec. 32, art. III, sec. 9, art. I, without the aid of sec. 10 of the Act of May 23, 1887, P. L. 158, would have protected the appellant from being compelled to give self incriminating evidence in the prosecution against Martin and the prosecution against Flaherty and Milholland. Section 32, art. III, takes away the privilege in the class of cases to which those prosecutions belong, but couples with the deprivation of it a provision protecting the witness, who has been compelled to give self incriminating testimony against the use, afterwards, of such testimony against him in any judicial proceeding, except for perjury in giving it. This being a matter subject to constitutional regulation the provision cannot be rejected upon the ground that it is in conflict with sec. 9, art. I, as already pointed out; nor is it permissible to enlarge it by construction, so as to give immunity which was not intended. It is not to be treated as a subordinate and less important provision, to be warped this way or that in order to

make the rule in bribery cases conform as nearly as possible to the rule in other cases. It is rather to be construed as an exception to the general rule against compulsory self incrimination, and as expressing the extent to which the framers of the constitution and the people adopting it deemed it wise, in that instrument, to give the witness immunity in exchange for the privilege of which he has been deprived. Thus viewing it, it is impossible to conclude that the words "such testimony shall not afterwards be used against him in any judicial proceeding" are the equivalent, or intended to be, of declaring "that the person so compelled to testify shall be exempt from punishment for the offense concerning which he is so required to testify, and of which he may be guilty." Certainly, the clause would not be given that effect in the construction of a statute. This the learned counsel for the appellant expressly conceded when they say in their able and comprehensive brief, it cannot be doubted that if the section were a statutory instead of a constitutional provision it would be held ineffective. This may not be conclusive of the construction that ought to be given to the section of the constitution, but it is a very pertinent consideration; for while great liberality of construction is allowed to bring constitutional provisions into harmony, so also is it permissible in order to bring a statute into harmony with the constitution. If it were permissible to refer to the proceedings of the constitutional convention in order to arrive at the intent of the section, it could be shown beyond doubt that a provision to give the witness complete immunity from prosecution was proposed, fully debated by able lawyers of the convention and rejected as inexpedient. In view of some of the latter utterances of the Supreme Court upon the subject of referring to the proceedings and debates of the convention in construing a constitutional provision, we make no point of the extraneous fact above referred to and rest our conclusion exclusively upon principles of construction which are well settled. Great stress is laid by appellant's counsel on

these remarks of Justice Dean in Kelley's Contested Election: "The argument that section 10 is fatally repugnant to section 9 of the Bill of Rights, and that the latter must prevail, is without force; assuming that the witness's answer would disclose the fact that he used money to purchase the votes of certain electors, his answer could not be used against him in any legal proceeding, therefore he would be subject to no penalty or fine involving deprivation of liberty or forfeiture of land or goods. The most that he could suffer would be that odium which attaches to moral turpitude." We think the learned counsel press these remarks beyond the real meaning of them when they cite them as supporting their contention that the witness could not afterwards be prosecuted. We hesitate to believe that Justice Dean intended that meaning to be taken from what he said. The utmost that can be claimed is that as the answer could not be used against him in any legal proceeding, he would not be subjected thereby, that is by his answer, to any penalty or fine involving deprivation of liberty or forfeiture of lands and goods.

It is not necessary to define with exact precision what use of the testimony of the witness is prohibited; it is enough for present purposes to say that it is not impossible that a person who has been compelled to give evidence tending to criminate him may be convicted without any use whatever of that testimony. Nor is it to be implied from what is averred in a special plea in bar that it would be impossible to convict the defendant without the use directly or indirectly of the testimony he had given in the prosecutions above referred to. This, as well as the fact that the present prosecution was not under sec. 49 of the penal code, is an answer to the suggestion that that section barred the prosecution.

Upon the question of the effect of the provisions of the federal constitution it is sufficient to refer to Twining v. New Jersey, 211 U. S. 78.

*Error assigned* was judgment of Superior Court.

*A. S. L. Shields*, with him *O'Brien & Ashley*, for appellants.

*Warren I. Seymour*, with him *William A. Blakeley*, for appellee.

PER CURIAM, January 3, 1911:

We concur in the conclusion reached by the Superior Court, that sec. 32, art. III, of the constitution is restrictive only of the use of the testimony actually given by a witness under compulsion and that it does not confer immunity from prosecution for an offense in relation to which a witness has been compelled to testify. We affirm the judgment on the opinion of the learned president judge of that court.