Commonwealth *v.* Haines, Appellant.

Argued March 24, 1952. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Milton S. Leidner*, for appellant.

*Thomas M. Reed*, Assistant District Attorney, with him *Michael von Moschzisker*, First Assistant District Attorney, *Edward K. Nichols, Jr.*, Assistant District Attorney, and *Richardson Dilworth*, District Attorney, for appellee.

OPINION BY RHODES, P. J., July 17, 1952:

These two appeals, Nos. 31 and 89, October Term, 1952, are from adjudications and sentences for con-

tempt. The appeals were consolidated for argument, and disposition will be made of both in this opinion.

Appellant appeared before a special investigating grand jury (March, 1951) which had been charged by Judge EDWIN O. LEWIS of the Court of Quarter Sessions of Philadelphia County under prescribed limitations. A petition of the District Attorney of Philadelphia County had been presented to the Judges of the Court of Quarter Sessions of the County of Philadelphia setting forth matters which, it was averred, gravely affected the public welfare, so that a thorough and complete investigation by a grand jury was required. The purpose of the grand jury investigation, as the court charged, was to investigate conditions within the county relating to an alliance said to exist between police and other public officials and criminals engaged in the operation of lotteries and other forms of gambling, such relationship being maintained through bribery and corrupt solicitation. Judge LEWIS charged this grand jury on March 22, 1951, it being the same as that before which another witness refused to testify. We shall not repeat the questions decided in that appeal (*Com. v. Butler*, 171 Pa. Superior Ct. 350, 90 A. 2d 838).

On several occasions appellant, when before the grand jury, had refused to answer questions asked by the assistant district attorney in charge of the grand jury investigation; he refused upon the advice of his counsel and claimed privilege against self-incrimination under Article I, §9, of the Constitution of Pennsylvania. The question which appellant refused to answer on September 5, 1951 (appeal No. 31), while first appearing before the grand jury was the following: "Did you ever pay to anybody, to be given to any person employed by the City or County of Philadelphia, any money to influence him in the performance of his

duty?" Appellant was then brought before Judge LEWIS, in open court, who directed him to answer the question that had been propounded to him, and any that might be propounded to him touching any alleged offenses of bribery or corrupt solicitation. He was informed that he could not refuse to testify on the ground that the answers might incriminate him or subject him to public infamy, and that such testimony as he was thus required to give before the grand jury could not thereafter be used against him in any judicial proceeding, reference having been made by the court to Article III, §32, of the Constitution of Pennsylvania. Appellant, on the advice of counsel, persisted in his refusal to answer or testify, and was thereupon adjudged in contempt, and sentenced, on September 12, 1951, to three months in the county prison, "unless he shall sooner purge himself of the contempt."

Article III, §32, of the Constitution of Pennsylvania provides as follows: "Any person may be compelled to testify in any lawful investigation or judicial proceeding against any person who may be charged with having committed the offence of bribery or corrupt solicitation, or practices of solicitation, and shall not be permitted to withhold his testimony upon the ground that it may criminate himself or subject him to public infamy; but such testimony shall not afterwards be used against him in any judicial proceeding, except for perjury in giving such testimony, and any person convicted of either of the offences aforesaid shall, as part of the punishment therefor, be disqualified from holding any office or position of honor, trust or profit in this Commonwealth."

It is argued on behalf of appellant that the question propounded was too broad, and that the payment concerning which inquiry is made must be to a named person in order that appellant shall be required to

answer under Article III, §32. Appellant seeks an interpretation of Article III, §32, under which a witness could be compelled to testify only in a "judicial proceeding against any person [a named person] who may be charged with . . . bribery or corrupt solicitation, . . ." Under appellant's theory, testimony could not be compelled under a grand jury "investigation" into bribery and corrupt solicitation, since it is not a "judicial proceeding against [a named person]." Section 32 of Article III cannot be given such a narrow construction. Our Supreme Court has held that section 32 of Article III must be liberally construed to carry out its underlying purpose, and that its words should be taken in their popular, natural, and ordinary meaning rather than in any technical or restricted sense. *Com. v. Bell,* 145 Pa. 374, 390, 22 A. 641. We all agree that the language used in Article III, §32, is subject to the plain and obvious interpretation which would compel testimony from "Any person . . . in any lawful investigation . . . of bribery or corrupt solicitation," as well as in a "judicial proceeding against any person . . . charged . . ." with these offenses. The question as propounded to appellant was neither too broad nor too general; and appellant could not legally refuse to answer on that ground. In view of this conclusion, it follows that the general question came within the purview of compellable testimony under a proper interpretation of Article III, §32. A grand jury investigation is by nature concerned primarily with things and general conditions rather than with specific individuals. *Com. v. Klein,* 40 Pa. Superior Ct. 352, 356. To accomplish a full investigation of general and public evils, affecting in their influence and operation communities rather than individuals, a witness before such grand jury may not remain silent but must testify where a constitutional provision such as section

32 of Article III prevents subsequent use of the testimony against him in any judicial proceeding (*In re Contempt of Myers and Brei,* 83 Pa. Superior Ct. 383, 391; *Com. v. Bell,* supra, 145 Pa. 374, 391, 22 A. 641); and this being a matter subject to constitutional regulation the provision cannot be rejected upon the ground that it is in conflict with Article I, §9.

We are not impressed with appellant's contention that he was deprived of due process of law under the Fourteenth Amendment to the Federal Constitution on the ground that Article III, §32, of the Constitution of Pennsylvania does not insure due process of law as provided by the Fourteenth Amendment. The prohibition against self-incrimination contained in Article V of Amendments to the Federal Constitution is not obligatory upon the governments of the several states or their judicial establishment, and regulates the procedure of the Federal courts only. *Ensign v. Pennsylvania,* 227 U. S. 592, 33 S. Ct. 321, 57 L. Ed. 658, 661. We have said that a statute may not limit the privilege against self-incrimination as given in Article I, §9, of the Constitution of Pennsylvania which is a similar prohibition to that in the Federal Constitution (*Com. v. Frank,* 159 Pa. Superior Ct. 271, 48 A. 2d 10); but Article III, §32, of the former restricts only the use of the testimony he was compelled to give, and does not confer immunity from prosecution for an offense in relation to which he was compelled to testify. "No one pretends that sec. 32, art. III, is not valid and enforceable, and could not do so without ignoring or denying effect to the decisions in Com. v. Gibbons, 9 Pa. Superior Ct. 527, affirmed on appeal in Kelly's Contested Election, 200 Pa. 430 [50 A. 248], and without asserting also that exemption from compulsory self incrimination is a natural right, or a right secured by the federal constitution, which a state con-

stitution can neither take away nor abridge—a position which is not sustained by principle or authority": *Com. v. Cameron,* 229 Pa. 592, 593, 79 A. 169.

We have no doubt whatsoever that appellant was obliged to testify in this grand jury investigation which concerned bribery and corrupt solicitation. *Com. v. Bell,* supra, 145 Pa. 374, 22 A. 641. And the fact that at the time he was called to testify before the grand jury he was a defendant and under indictment on a lottery charge did not excuse him from testifying under Article III, §32.[1] Upon the claim of privilege he was given the protection afforded by this constitutional provision; he could claim no more. The privilege against self-incrimination given in Article I, §9, is subject to two modifications—Article III, §32, and Article VIII, §10. Under section 32 *any* person may be compelled to testify, subject to the protection given thereby.

In the court below counsel for appellant stated that he did not question the lawfulness of the grand jury investigation. On this appeal, however, he contends that the grand jury investigation here involved was not a lawful investigation (1) as the district attorney's petition was legally insufficient to justify the summoning of a special grand jury, and (2) as the scope of the grand jury investigation went beyond inquiry into bribery and corrupt solicitation. Consequently, it is

---

[1] In *Manko Appeal,* 168 Pa. Superior Ct. 177, 77 A. 2d 700, appellants, by name, were accused of crime in the petition of the Attorney General for the summoning of a special investigating grand jury to inquire concerning the defrauding of the City of Pittsburgh, and the judgments were reversed. In *Com. v. Bane,* 39 Pa. D. & C. 664, the defendants were specifically accused of crime in a petition for a special grand jury to investigate the alleged crime, and the indictments were quashed. Neither of these cases involves Article III, §32, of the Constitution of Pennsylvania.

argued, that appellant was not required under Article III, §32, to answer the question put to him. A grand jury investigation is properly ordered where it appears to a court "that there exists a system of crime among public officers, or criminal conspiracies respecting public business, safety or health, or other criminal acts affecting these functions of a widespread nature, jeopardizing or demoralizing public security or health, . . .": *McNair's Petition*, 324 Pa. 48, 61, 62, 187 A. 498, 504. In the present case the summoning of the grand jury was a proper exercise of the court's power. The petition of the district attorney and the charge of the court define the investigation as one dealing with the widespread existence of gambling in various forms by reason of bribery and corruption of police and other officials in the City of Philadelphia. The question asked appellant dealt immediately with the subject of the inquiry, and came within the scope of testimony which appellant was required to give under Article III, §32.

The sentence for contempt in appeal No. 31 was imposed by the court below on September 12, 1951. Subsequently, on December 11, 1951, appellant was adjudged in contempt for the second time (appeal No. 89) by the same court for his refusal to answer other questions before the same special investigating grand jury. In the interim appellant had made certain voluntary statements to the members of the district attorney's staff relative to a corrupt alliance between gamblers and police officials. These statements were made in private under an agreement between the district attorney and counsel for appellant.

After an extended discussion with counsel for appellant and the assistant district attorney, the court below ruled (1) that appellant waived his privilege against self-incrimination by reason of his voluntary

statements made to the district attorney, and that this waiver was effective in the grand jury investigation; and (2) that the agreement with the district attorney that the voluntary statements would not constitute a waiver of privilege against self-incrimination was not binding upon the court or the district attorney. Before imposing sentence for the second contempt, the court asked appellant if he wished to purge himself of the contempt, and appellant replied in the negative stating that he refused to answer on the ground of constitutional privilege. The court thereupon, without giving the directions and instructions to appellant as in the prior contempt proceeding (appeal No. 31), again adjudged appellant in contempt and sentenced him to imprisonment in the county prison for a term of six months. We think it was incumbent upon the court to inform appellant, before adjudging him in contempt and imposing sentence, that he must answer the questions asked, and that his answers could not be used against him in any judicial proceeding, except for perjury in giving such testimony.[2] Article III, §32, giving the witness certain immunity in exchange for the privilege of which he has been deprived is an exception to the general rule against compulsory self-incrimination, and when the privilege is claimed and the witness directed to testify it is necessary for the court to inform him of the extent and nature of his protection. This we deem a preliminary requisite to the adjudication of contempt in the present case, as under Article III, §32, the use of the testimony afterwards against a witness whose claim of privilege has been overruled is confined only to the testimony which has been given under compulsion. See *Com. v. Cameron*, supra, 229 Pa. 592, 597, 79 A. 169; *Com. v. Richardson*, 229 Pa.

---

[2] See *Com. v. Bell*, 145 Pa. 374, 387, 22 A. 641.

609, 616, 79 A. 222. When compelled to give what may be incriminating testimony notwithstanding Article I, §9, of the Constitution of Pennsylvania, a witness is entitled to be fully advised as to the protection which the Constitution does afford.

The Commonwealth in its brief concedes that the judgment and sentence (No. 89, October Term, 1952) should be reversed.

It is unnecessary for us to pass upon other questions which have been argued on this appeal.

In appeal No. 31, October Term, 1952, judgment and sentence are affirmed, and the record is remitted to the court below, and it is ordered that the defendant, Harry W. Haines, appear in the court below at such time as he may there be called, to the end that the sentence of the court pronounced against him on September 12, 1951, for contempt be fully executed.

In appeal No. 89, October Term, 1952, judgment and sentence of December 11, 1951, are reversed, and defendant is discharged.