## Rosenberg Appeal.

510

512

Argued April 15, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

Lester J. Schaffer, with him Charles F. Mayer, and Gray, Schaffer & Malloy, for appellants.

Clement J. McGovern, with him J. Harold Hughes, Assistant District Attorneys, and Raymond R. Start, District Attorney. for appellee.

OPINION BY RHODES, P. J., June 18, 1958:

These appeals have been taken by Max A. Rosenberg and Edward Heller from sentences summarily imposed by the Court of Quarter Sessions of Delaware County for contempt of court because of their refusal to testify before a special grand jury.

On January 17, 1958, the District Attorney of Delaware County filed a petition in court alleging that crimes had been committed in connection with negotiations between officials of the Township of Darby and Max A. Rosenberg and Minnie Rosenberg, his wife, the

owners of land in the township, for a proposed lease-purchase of the land to be used for a dumping and incinerator site. Appellants were specifically named in the petition as parties involved in the negotiations, and it was alleged therein that a criminal conspiracy existed for the purpose of defrauding the township.

The Court of Quarter Sessions of Delaware County, on January 17, 1958, granted the petition and ordered that the grand jury for the December Sessions, 1957, convene on January 29, 1958, and "make full inquiry into all matters concerning the negotiations, actions and conduct of the Board of Commissioners of Upper Darby Township, its members, employees, agents or representatives, and of all other persons, corporations or associations, in the matters of the selection, purchase, lease or acquisition by said Township of ground for an incinerator or for the disposal of refuse material, with particular reference to the site designated in the District Attorney's said Petition; . . ." The grand jury met on January 29, 1958, as ordered, and was charged by the court prior to its investigation. The court read the petition of the district attorney to the grand jury and instructed them to investigate the matter and to make a presentment or suggestion to the court thereafter whether certain individuals should be indicted by a future grand jury. Although the grand jury was instructed that it could inquire into any violations of the criminal code, the court stated: ". . . the specific charge which seems to be preliminarily in this matter is that of a criminal conspiracy." The persons subpoenaed by the district attorney, including the two appellants, were sworn as witnesses.

On February 5, 1958, appellants were called as witnesses before the grand jury, at which time they apparently refused to answer questions, claiming the privilege against self-incrimination under article I, §9

of the Constitution of Pennsylvania. Appellants were brought before the court with their counsel and oral argument was had on the matter. The court then entered orders that appellants "be compelled to testify before the said investigating grand jury to any matters relevant to the subject matter under investigation, and against any person who may be charged with having committed the offense of bribery, or corrupt solicitation, or practices of solicitation, and he shall not be permitted to withhold his testimony before said investigating grand jury upon the ground that it may criminate himself, or subject him to public infamy; but such testimony shall not afterwards be used against him in any judicial proceeding, except for perjury in giving such testimony." The orders as they related to immunity were entered by the court in reliance upon article III, §32 of the Constitution of Pennsylvania.

It seems that appellants were not called thereafter as witnesses until February 21, 1958. On that day they again refused to testify, claiming the privilege not to do so. Appellants, their counsel, and the assistant district attorney appeared before the court and a lengthy colloquy ensued concerning their refusal to testify. At the conclusion of the discussion appellants were adjudged in contempt of court and committed to the Delaware County Jail until they purged themselves of the contempt.

The court refused requests for bail pending appeals to this Court. Appeals were filed together with petitions for supersedeas. On February 24, 1958, this Court issued rules upon the district attorney to show cause why supersedeas should not be granted. We fixed March 4, 1958, for a hearing and released appellants on bail until our disposition of the rules. On March 11, 1958, we made the rules absolute and granted supersedeas upon the entering of bail by each appel-

lant in the amount of two thousand five hundred dollars, pending the argument and determination of the appeals. The matter is now before us for disposition on the merits of the adjudications for contempt.[1] The judgments of sentence will be reversed.

The power of a court to punish for contempt is essential to the administration of justice; it enables the court to protect itself from insult and to enforce obedience to its process. The power to punish summarily contempt committed in the actual view of the court has been generally believed to have existed in England from an early period.[2] Proceedings before the grand jury are regarded as proceedings in the court itself and contempts occurring in the presence of the grand jury are considered as taking place in the presence of the court or so near thereto as to obstruct the administration of justice or interfere with its immediate business. When a witness before a grand jury refuses to testify he may be brought before the court, compelled to testify, and sentenced for contempt upon his refusal to answer proper questions. *Com. v. Butler*, 171 Pa. Superior Ct. 350, 356, 90 A. 2d 838. Summary punishment for contempt of this nature, however, must be based upon a refusal to answer proper questions. If a witness called before a grand jury declines to answer a question on the ground that it might tend to incriminate him and his exercise of this constitutional privilege is well founded, he may not be held in contempt for refusing to obey the order of court. *Manko Appeal*, 168 Pa. Superior Ct. 177, 77 A. 2d 700; *Com. v. Gross*, 172 Pa. Superior Ct. 85, 89, 92 A. 2d 251. If the wit-

---

[1] Although the district attorney, through one of his assistants, participated in the argument of the appeals, he has not filed a brief.

[2] See concurring opinion of Mr. Justice FRANKFURTER in *Green v. United States*, 355 U. S. 165, 78 S. Ct. 632, 646, 2 L. Ed. 199.

ness refuses to testify but does not claim the privilege he may be adjudged in contempt for his refusal. *Com. v. Butler,* supra, 171 Pa. Superior Ct. 350, 353, 90 A. 2d 838.

Article I, §9 of the Constitution of Pennsylvania provides in part: "In all criminal prosecutions the accused . . . cannot be compelled to give evidence against himself, . . ." The constitutional protection applies to witnesses as well as to parties (*Com. v. Tracey,* 137 Pa. Superior Ct. 221, 224, 8 A. 2d 622; *Schwinger Appeal,* 181 Pa. Superior Ct. 532, 538, 124 A. 2d 133) and to proceedings before a grand jury (*Manko Appeal,* supra, 168 Pa. Superior Ct. 177, 179, 180, 77 A. 2d 700). Where, as here, the witnesses are named as persons implicated in the criminal acts in the petition requesting the convening of the investigating grand jury, such persons are not merely witnesses but they are the accused. *Manko Appeal,* supra, 168 Pa. Superior Ct. 177, 180, 77 A. 2d 700. Such persons should not be called as witnesses and they should not be adjudged in contempt for the refusal to testify on a proper claim of privilege. *Com. v. Gross,* supra, 172 Pa. Superior Ct. 85, 89, 92 A. 2d 251. It is to be noted that these appellants were accused in the petition of violating the criminal law and in particular of participating in a criminal conspiracy for the purpose of defrauding the Township of Upper Darby in the matter of the proposed lease-purchase agreement.[3] The petition of the district attorney was read to the grand jury by the court in its charge. Since the primary purpose of the grand jury investigation, according to the charge of the court, was to ex-

---

[3] The presentment of the grand jury, subsequently filed, recommended that these appellants be indicted for conspiracy to cheat and defraud the township and for corrupt solicitation; in addition, it recommended that appellant Heller be indicted for bribery and for an unlawful interest in a township contract.

amine into a possible criminal conspiracy involving these appellants, their refusal to answer questions with reference to this matter certainly could not form the basis for a judgment of contempt. The court could not compel appellants to testify to all matters "which are with reference to the investigation now in being" under these circumstances and grant immunity with respect to "any statement or statements" which they might make before the grand jury, as it attempted to do.

It is true that the appellants could not claim the privilege under article I, §9 of the Constitution if the investigation and the questions related to the offenses of bribery and corrupt solicitation. Article III, §32 of the Constitution of Pennsylvania makes an exception to the general privilege in such cases and provides: "Any person may be compelled to testify in any lawful investigation or judicial proceeding against any person who may be charged with having committed the offense of bribery or corrupt solicitation, or practices of solicitation, and shall not be permitted to withhold his testimony upon the ground that it may criminate himself or subject him to public infamy; but such testimony shall not afterwards be used against him in any judicial proceeding, except for perjury in giving such testimony, . . ." This exception to the privilege against compulsory self-incrimination, however, is a very limited one, and the proscription against the later use of testimony against a witness whose claim of privilege has been overruled by reason of article III, §32, is confined to the testimony which has been given under the compulsion. *Com. v. Haines,* 171 Pa. Superior Ct. 362, 371, 90 A. 2d 842. For this reason a witness who is compelled to give what may be incriminating testimony under article III, §32, notwithstanding article I, §9, is entitled to be fully advised as to the pro-

518

tection which the Constitution affords. *Com. v. Haines,* supra, 171 Pa. Superior Ct. 362, 371, 372, 90 A. 2d 842.

It is evident that these appellants were not fully advised in this respect when the court ordered them to testify to all matters being investigated by the grand jury and gave a purported immunity as to all such testimony. At one point appellants were ordered to "answer questions which are with reference to the investigation now in being; and also answer questions which are with reference and in connection with bribery or corrupt solicitation now under investigation." The court went on to say: ". . . we are now directing you, as a Court of law, to go before the Grand Jury and submit yourself to inquiry and to answer those pertinent questions." At a later stage of the hearing the court said: "Now we direct you as a Court that you should go before the Grand Jury under oath as you have already been sworn to do, and answer questions which are pertinent to the issues which are propounded to you that you know about now from this open hearing. We say that you should go there and you should answer relevant questions to those issues. Now do you say you would go before the Grand Jury and testify and answer those questions?" The issues before the grand jury were not limited to bribery and corrupt solicitation. In fact, these crimes were not originally included in the investigation. They apparently entered it after the grand jury had convened. They were not mentioned in the petition of the district attorney or in the charge of the court to the grand jury. Cf. *Com. v. Butler,* supra, 171 Pa. Superior Ct. 350, 354, 90 A. 2d 838. At the hearing on the refusal to testify the court did not restrict its inquiry to bribery and corrupt solicitation but included all matters being investigated by the grand jury. There was never any

inquiry into the specific questions which were asked of appellants in the grand jury room and which they refused to answer.[4] The order of court directing them to testify was general, and to comply therewith appellants would have been obliged to testify to all matters, including those upon which they would normally have the right to claim the constitutional privilege, such as the alleged conspiracy to defraud the township. If they had testified to such matters, they would not have had the immunity granted by article III, §32, as it is not that broad in its application.

Moreover, it was impossible for the court to determine whether appellants properly claimed the privilege as to the questions asked of them in the grand jury room as the recognized procedure for determining that issue was not followed. In *Manko Appeal,* supra, 168 Pa. Superior Ct. 177, 180, 77 A. 2d 700, 702, we said: "While the witness, of course, is not the sole judge of whether the answer might be incriminating, yet each question must be viewed in the light of whether the answer *can* implicate the witness. . . . 'When a question is propounded, it belongs to the court to consider and to decide whether *any* direct answer to it *can* implicate the witness. If this be decided in the negative, then he may answer it without violating the privilege which is secured to him by law. If a direct answer to it may criminate himself, then he must be the sole judge what his answer would be. The court cannot participate with him in this judgment, because they cannot decide on the effect of his answer without knowing what it would be; and a disclosure of that fact to the judges would strip him of the privilege which the law allows, and which he claims.' " We are at a loss

---

[4] The assistant district attorney offered at one point to ask specific questions of appellants, but the court refused to permit it.

to.conclude how the court could determine whether appellants were in contempt of court for refusing to answer questions when the questions were unknown. Obviously, neither the court nor the witnesses could determine whether any answer to these unknown questions might possibly implicate them. The fact that appellants were directed, in a portion of the court's order to answer questions relating to bribery and corrupt solicitation does not support the contempt conviction as they were not held in contempt merely because of their refusal to answer questions concerning bribery and corrupt solicitation; it was because of their refusal to answer any questions asked of them in the course of the investigation as well as those relating to bribery and corrupt solicitation. Certainly the court did not make clear the limited immunity granted by article III, §32, before adjudging appellants in contempt. This prerequisite to an adjudication of contempt was not fulfilled by the court when it entered a general order that appellants testify to all matters relating to the investigation as well as to bribery and corrupt solicitation and therein stated: ". . . you would be held immune forever after from any statement or statements which you might make before the Grand Jury." A witness is not "fully advised" as to the protection which the Constitution affords him when he is advised that all testimony which he might give before the grand jury could not later be used in any proceeding against him.[5] The immunity is not that extensive under the Consti-

---

[5] Counsel for appellants asked the court: "Do I understand your Honor's last order to mean that this man would be in contempt if he refused to answer a question before the Grand Jury that had nothing whatsoever to do with bribery? It will help us in advising our client, sir, to understand that." To which the court answered: "I think we have said all we are going to say of this subject, as far as I am concerned."

tution, and it may not be extended by the order of the court.

The question has arisen whether these appeals raise a moot issue because the grand jury before which appellants could purge themselves of the contempt convictions and obtain their release from commitment has since been discharged. A direct criminal contempt consists of misconduct of a person in the presence of the court, or so near thereto as to interfere with its immediate business, and a sentence for such contempt is a punishment which may be summarily enforced. See Act of June 16, 1836, P. L. 784, §§23, 24, 17 PS §§2041, 2042; *Philadelphia Marine Trade Association v. International Longshoremen's Association, Local Union No. 1291,* 392 Pa. 500, 140 A. 2d 814. A direct criminal contempt is to be distinguished from an indirect criminal contempt under the Act of June 23, 1931, P. L. 925, §§1, 2, 17 PS §§2047, 2048, occurring outside the presence of the court, which also is punitive in that imprisonment or a fine or both may be imposed; it is also to be distinguished from a civil contempt, the dominant purpose of which is to enforce compliance with a decree or order of the court and in which instance a defendant may be committed until he purges himself of the contempt. See *Cox v. Cox,* 391 Pa. 572, 582, 137 A. 2d 779; *Knaus v. Knaus,* 387 Pa. 370, 375-377, 127 A. 2d 669; *Casco Products Corporation v. Hess Brothers, Inc.,* 184 Pa. Superior Ct. 47, 51, 132 A. 2d 922. In direct criminal contempt committed in open court, imprisonment is imposed as a punishment and is for a definite period. *Com. ex rel. Keely v. Perkins,* 124 Pa. 36, 48, 16 A. 525. A penalty imposed, "committed until purged thereof," is without authority of law. *Com. v. Heenerfauth,* 70 Pa. Superior Ct. 527, 529. That portion of appellants' sentences that they were committed until they purged themselves of the

522

contempt was therefore a nullity. But if we were to quash the appeals as moot the contempt convictions would remain against appellants. We said in *Com. v. Butler*, supra, 171 Pa. Superior Ct. 350, 357, 90 A. 2d 838, 842: "The contempt being criminal and the sentence punitive, the subsequent discharge of the grand jury did not invalidate the judgment of contempt or render moot the question of appellant's compliance with the sentence."

The judgments of sentence are reversed, and appellants are discharged.