## Commonwealth v. Waite.

*W. D. Zerby*, for defendant and rule.
*John G. Love*, District Attorney, contra.

FLEMING, P. J., July 18, 1929.—The question before the court is as to whether or not a justice of the peace has power to punish a person summarily by imprisonment for contempt, committed before him. In the instant case the justice of the peace issued his subpœna directed to the defendant, commanding him to appear and testify in a matter pending before him. Upon defendant's default, an attachment was issued by the justice of the peace.

It has long since been decided that a justice of the peace does not have such power. In Albright v. Lapp, 26 Pa. 99, it is clearly decided that no such authority exists, and we have been unable to find otherwise, either in judicial decision or legislative enactment.

In Brooker v. Com., 12 S. & R. 175, where it is decided that an indictment can be supported for contempt of a justice of the peace, it is also held that such amounts to an obstruction of the execution of his office. Justice Gibson therein says: "Every obstruction of an officer, in the execution of his office, is a public injury, and, unless where the legislature has directed otherwise, is indictable. Indeed, were it necessary to the due administration of the laws that justices of the peace should have power of commitment for contempt, I would not hesitate to declare that the grant of the office carried with it as an incident all ancillary power which should be necessary to its complete execution. But, as punishment of contempts by indictment is commensurate with this object, I am content that the law, in this respect, be held here as it is in England. By treating such contempt as an indictable offense, we put it in the power of the justice to hold the offender to bail, to answer to a prosecution and be of good behavior in the meantime, and to commit him in default of finding bail; which is sufficient to prevent a repetition of the offense. It is, therefore, unnecessary to the administration of justice that a justice should exercise the high power of punishing by attachment, which, in the hands of many magistrates, might become a public grievance. But that to obstruct a magistrate in the execution of his office is an indictable offense is a proposition about which it is impossible to doubt."

Again, in Albright v. Lapp, 26 Pa. 99, Justice Woodward comments aptly as follows: "For more than one hundred and fifty years (it is now almost two hundred and twenty-five—these parentheses are ours) these remedies have proved adequate for the protection of this important branch of our judicial system, and if the power to punish contempts summarily (which, like all irresponsible power, is exceedingly liable to abuse) is now to be added, it must be done by legislation. Such a power, wherever claimed and exercised, needs a firmer basis to stand on than judicial implication. If the higher courts have derived it from courts of equity, the legislature have defined and limited it; and if the legislature have not defined and limited it in the hands of justices of the peace, it is because they have not derived it from courts of equity or any other source."

Our legislature not having deemed it wise to entrust the power of punishing for contempt to justices of the peace, it is not for us to attempt to do so. The rule is well settled that no such power exists. Justices should, however, be prompt to hold defendants, as in this case, to bail in order that a proper indictment may be laid. Citizens should co-operate rather than hinder the several magistrates in the enforcement of law. The behavior of the defendant in the instant case, if proven, merits punishment, but under our established decisions the right to mete out this punishment does not lie summarily in the magistrate. The defendant must be indicted and tried by a jury of his peers. We, therefore, make the following order:

And now, July 18, 1929, the attachment of a justice of the peace is dissolved and defendant discharged for reasons above stated. The district attorney is directed, however, to cause the proper process to be awarded against defendant and a bill of indictment to be submitted to the next grand jury. Costs in the instant case to be paid by the County of Centre.

From S. D. Gettig, Bellefonte, Pa.