**Commonwealth v. Fisher**

*David C. Shipman,* District Attorney, for petitioner.

*Edward H. Fisher,* propria persona.

RAUP, *J.,* May 19, 1976—After hearing held February 20, 1976, on the petition of the Commonwealth to hold defendant in contempt of court, the court makes the following findings, which have been established beyond a reasonable doubt:

On November 21, 1975, at about 4 p.m., a hearing was scheduled before District Magistrate Dean E. Dawes in which defendant herein was charged with certain game law violations. As the magistrate entered the hearing room, defendant was preparing a tape recorder, and it was apparent he was having difficulty preparing the recorder for use. The magistrate waited while defendant worked on the machine. After a pause, being under the impression that defendant was ready to proceed, the magistrate began the hearing by asking the district game protector, who was the prosecutor, if he was ready to proceed. The magistrate advised defendant of the charges and of his right to counsel. At that time, the prosecuting officer asked that defendant's witnesses be sequestered. The magistrate granted the request and asked defendant's two witnesses to leave the courtroom

until they were called as witnesses, and the magistrate also advised the parties that he would allow sequestration of the prosecution witnesses. As the two defense witnesses began to leave the courtroom, defendant jumped to his feet shouting to them, "You sit your asses back down, you don't have to leave." He proceeded to begin to mention a Supreme Court ruling, but the district magistrate interrupted to caution him that he was out of order. Defendant by this time was in a highly excited state and was shouting at the magistrate such things as "This is a Goddamn kangaroo court," and "you're all a bunch of sons of bitches," and "you can go to hell." The magistrate, during this period, cautioned defendant that a contempt proceeding could follow and also told defendant that, if he persisted, he would be asked to leave the courtroom and the hearing would proceed in his absence and that the magistrate would have no choice but to base his opinion on the Game Commission testimony and find him guilty. Defendant obtained the impression that the hearing was over and that he had been found guilty, at which time he left the courtroom continuing to shout such things as, "This is a Goddamn kangaroo court." After defendant left, the magistrate proceeded with the hearing in his absence, receiving testimony and finding defendant guilty. This petition to hold defendant in contempt ensued.

The court notes that even prior to the hearing, defendant had been talking in a loud voice in the waiting room, making disparaging remarks about the quality of justice dispensed in that courtroom and saying that he'd been there before and that he did not expect to receive a "fair shake."

The magistrate attempted to conduct the hear-

ing in an orderly and proper manner, but was prevented from doing so by reason of defendant's conduct. Defendant's conduct did not derive from a preconceived plan to disrupt the proceeding, but rather from a misplaced belief that he would not receive a fair hearing.

The issue is whether this court has jurisdiction to use its summary criminal contempt powers to punish defendant for his conduct before the magistrate.

Initially, we note that a magistrate has no power to punish a person summarily for contemptuous acts committed before him: Albright v. Lapp, 26 Pa. 99 (1856); Philadelphia County Election Board v. Rader, et al., 162 Pa. Superior Ct. 499, 58 A. 2d 187 (1948). Albright held that the regular criminal processes, including the criminal charge of obstructing justice, were available to deter individuals from obstructing magisterial proceedings.

Under the Act of June 16, 1836, P.L. 184, §2041: "The power of the several courts of this commonwealth to . . . inflict summary punishments for contempts of court shall be restricted to the following cases, to-wit:

". . .

"III. To the misbehavior of any person in the presence of the court, thereby obstructing the administration of justice."

An act of misbehavior before a magistrate is not "in the presence of " this court. There is no other statute which would give this court power to summarily hold a person in criminal contempt for misbehavior before a magistrate; nor have we been able to find any case law on point.

We, therefore, hold that this court is without power to summarily punish contempts committed before a magistrate.

This holding does not deprive the magistrate of power to control the misbehavior of persons and to maintain proper decorum in his courtroom. Among the sanctions available to the magistrate are one or more of the following:

1. In an appropriate case, institution of a charge of disorderly conduct, Act of December 6, 1972, P.L. 1068 (No. 334), 18 Pa.C.S. §5503; harassment, 18 Pa.C.S. §2709, or obstructing administration of law or other governmental function, 18 Pa.C.S. §5101. See Albright v. Lapp, supra; Commonwealth v. Hargreaves, 50 D. & C. 641 (1944).

2. After appropriate warning in a summary case, a contemptuous defendant could be physically removed from the courtroom and the hearing held in his absence. In effect, this option was followed in the instant case: Illinois v. Allen, 397 U.S. 337, 90 S. Ct. 1057 (1970); Commonwealth v. Africa, —Pa. —, 353 A. 2d 855 (1976).

3. Application can be made to this court for the use of its civil contempt power. Where a defendant refuses to behave himself in the presence of a magistrate, the magistrate may halt the proceeding and apply to the court for a rule to show cause why the unruly defendant should not act, or refrain from acting, in a certain way or be held in contempt. An order entered after hearing on such application would be enforceable by the civil contempt powers of this court. Such a procedure has been followed in other cases.*

---

*For example, recently, in this county, a wife who was called as a witness for the Commonwealth refused to testify at a preliminary hearing before a magistrate where her husband was charged with arson. The Commonwealth petitioned the court for a rule to show cause why the wife-witness should not be required to testify on penalty of being held in contempt of court. After hearing and argument, the court held that the

A comparable procedure has been followed where a witness has refused to answer questions before a grand jury: Rosenberg Appeal, 186 Pa. Superior Ct. 509, 515, 142 A. 2d 449 (1958).

## ORDER

And now, May 19, 1976, the petition of the Commonwealth to hold defendant in contempt of court is hereby dismissed.

---

interspousal immunity was not applicable under the circumstances (the wife was allegedly the intended victim of the crime) and directed that the woman testify upon penalty of being incarcerated. She thereupon did testify; but had she not, this court would have had the power to require her testimony under its contempt powers: Commonwealth v. Randall (Lycoming County, No. 75-11,238, December 8, 1975.)