## Kegg et al. *v.* Bianco, Appellant, et al.

Argued September 28, 1942.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, RHODES, HIRT and KENWORTHEY, JJ.

*W. T. Corbett,* for appellant.

*Harry Alan Sherman,* for appelles.

OPINION BY KENWORTHEY, J., January 28, 1943:

In 1940 the learned chancellor of the court below was called upon to restore order to the chaotic affairs of Local No. 211 of the Newspaper Delivery Drivers' Union; to conduct through receivers a free election of officers, thus restoring control to the members; and to protect the new officers and the members from the racketeering domination of appellant. On December 10, 1941, it made an order, inter alia, enjoining appellant "from coercing, intimidating or otherwise hindering the officers or members of said local in the conduct and management of the affairs thereof and from any interference whatsoever with the meetings and activities of said local No. 211, save to take part in an orderly discussion of the Union's affairs, as they may arise in any meeting or meetings thereof, so long as they maintain their eligibility therein."

On April 28, 1942, Dominick Grande, a member of the local, filed a petition asking that appellant be adjudged in contempt of court, and alleging that on April 27, 1942, appellant appeared at a meeting of the executive board of the local "and did viciously assault petitioner, seriously injuring petitioner and

threatening to kill petitioner, thereby intimidating the members of the executive board" and others.

The evidence amply supported the allegation in the petition. Upon it the court, after a summary hearing, found appellant guilty of contempt and made an order requiring him to pay a fine of $300 and to undergo an imprisonment for ten days in the Allegheny County jail.

Both in his answer to the petition and by motion at the hearing, appellant demanded a jury trial. The question is whether he was entitled to it.

The Act of June 23, 1931, P. L. 925, 17 PS §2047, provides: "In all cases where a person shall be charged with indirect criminal contempt for violation of a restraining order or injunction issued by a court or judge or judges thereof, the accused shall enjoy ...... (c) Upon demand, the right to a speedy and public trial by an impartial jury of the judicial district wherein the contempt shall have been committed, provided that this requirement shall not be construed to apply to contempts committed in the presence of the court or so near thereto as to interfere directly with the administration of justice, or to apply to the misbehavior, misconduct, or disobedience of any officer of the court in respect to the writs, orders, or process of court."

The constitutionality of this Act was exhaustively considered and upheld by this court and by the Supreme Court in *Penn Anthracite Mining Co. v. Anthracite Miners of Pennsylvania,* 114 Pa. Superior Ct. 7, 174 A. 11, 318 Pa. 401, 178 A. 291, a case almost identical on its facts with the present one.

It must be conceded that the contempt was *indirect* since "committed not in the presence of the court or so near thereto as to interfere directly with the administration of justice." See Penn Anthracite Case, 114 Pa. Superior Ct. at page 12. It is likewise clear that since an indictment would lie for the crime in-

volved in the acts said to have been committed the contempt was criminal. See Penn Anthracite Case, 318 Pa. at page 404.

But appellee argues (1) that the *Penn Anthracite* case is distinguishable because there the persons charged with contempt were not parties served with the court's injunction, and (2) that the criminal contempt encompassed a civil contempt—the violation of the court's decree in a private dispute—and was punishable as such by the court in a summary proceeding by virtue of the court's inherent power to compel the enforcement of its own decrees.

The first contention is clearly without merit. The Act of 1941 applies by its terms to *"all* cases where a person shall be charged with indirect criminal contempt for violation of a restraining order or injunction" regardless of whether the person is a party or a stranger.

We think the second argument has been settled against appellee by the *Penn Anthracite Case.* The inherent power of the court to punish persons guilty of contempt for its order has not been taken away by the Act of 1931; the function of determining the issues of fact has simply been taken from the judge and given to the jury. This was clearly pointed out by Mr. Justice MAXEY in his concurring opinion in the *Penn Anthracite* Case, where he said at page 421: "Another fallacy in appellant's argument is that the Act of 1931 takes away from *the court* the right to punish for disobedience to its process. What is taken away is only the right of the *judge* whose order the respondent is accused of disobeying, to determine unaided by a jury the fact of disobedience." And as the learned chancellor of the court below himself said in an article on 'Contempt' appearing in the March 1932 issue of the Pennsylvania Bar Association Quarterly (No. 11), pages 22, 23: "And after all is not the

nearest approach to accurate justice the right of trial by jury, save when a criminal contempt occurs in the presence of the Court, as seems to be the Pennsylvania rule?"

The order of the court is reversed and the record remitted for further proceedings not inconsistent with this opinion.