Commonwealth *v.* Mayberry, Appellant.

Submitted November 11, 1968. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Richard J. Mayberry,* appellant, in propria persona.

*Richard Max Bockol* and *James D. Crawford,* Assistant District Attorneys, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE O'BRIEN, June 27, 1969:

This is an appeal from a conviction of contempt, arising out of appellant's actions at his trial in Philadelphia County for perjury. Appellant, Richard O. J. Mayberry, is no stranger to this Court, his conviction for contempt in Allegheny County having recently been affirmed, *sub nom Mayberry Appeal,* 434 Pa. 478, 255 A. 2d 131 (1969). In the instant case, appellant was sentenced to a total of five years imprisonment for various contemptuous actions committed in the presence of the Court, including throwing a book at the trial judge and narrowly missing him. He also told the judge that he wished he would "break his neck instead of hurting his back." He referred to the proceedings as a "kangaroo court." The court below, pursuant to the Act of June 16, 1836, P. L. 784, §23, 17 P.S. §2041, found that this conduct was so offensive to the administration of justice that conviction and sentence were appropriate and justified. We agree.

Appellant makes numerous constitutional arguments, all of which boil down to the contention that the summary procedure used in the instant case, necessarily including the denial of a trial by jury, was unconstitutional. He relies chiefly upon the case of *Bloom v. Illinois,* 391 U. S. 194, 88 S. Ct. 1477 (1968), which held that the constitutional guarantees of jury

trial extend to serious criminal contempts. However, in *DeStefano v. Woods*, 392 U. S. 631, 88 S. Ct. 2093 (1968), the Court held that *Bloom* need not be applied retroactively. The Court considered the very issues raised by appellant here: "The considerations are somewhat more evenly balanced with regard to the rule announced in Bloom v. State of Illinois. One ground for the Bloom result was the belief that contempt trials, which often occur before the very judge who was the object of the allegedly contemptuous behavior, would be more fairly tried if a jury determined guilt. Unlike the judge, the jurymen will not have witnessed or suffered the alleged contempt nor suggested prosecution for it. However, the tradition of nonjury trials for contempts was more firmly established than the view that States could dispense with jury trial in normal criminal prosecutions, and reliance on the cases overturned by Bloom v. State of Illinois was therefore more justified. Also, the adverse effects on the administration of justice of invalidating all serious contempt convictions would likely be substantial. Thus, with regard to the Bloom decision, we also feel that retroactive application is not warranted."

Since appellant's trial began long prior to the decision in *Bloom* on May 20, 1968, he would not be entitled to the benefits of that decision even if he could show that he otherwise came within its scope.

Since prior to *Bloom,* courts undoubtedly had the power to convict and sentence summarily for contempts committed in their presence, *Levine Contempt Case,* 372 Pa. 612, 95 A. 2d 222 (1953), appellant's argument must fail. The judgment of sentence is affirmed.

Mr. Justice COHEN concurs in the result.

---

CONCURRING OPINION BY MR. CHIEF JUSTICE BELL:

I join in the majority Opinion but (1) so many contempts or alleged contempts of Court, especially

indirect contempts, have recently occurred in trial Courts or against trial Judges, and (2) the law on the subject of contempt has been so recently altered by the Supreme Court of the United States but, in many cases, still left in doubt, and (3) the Constitutional questions raised by the appellant are so important, that I am impelled to analyze and review the subject matter of contempt of Court in far greater detail than does the Majority.

This is an appeal from a conviction arising out of a *direct* criminal contempt *in the presence of the Court.* Appellant was *summarily* convicted on five charges of contempt of Court *and sentenced to five* separate and consecutive *sentences of one year* for each separate contempt.

In October of 1963, appellant Richard Mayberry was indicted for perjury. In May and June of 1965, during the pre-trial hearing of the perjury charge and during the trial itself, Judge WEINROTT cited Mayberry for contempt of Court, and at the conclusion of the perjury trial imposed the above-mentioned sentences upon Mayberry. Among other things, Mayberry *in open Court* threw a World Almanac at Judge WEINROTT, which barely missed striking him. He also told the Judge that he wished he would "break his neck instead of hurting his back." In addition to the personal epithets which Mayberry in open Court hurled at the Judge, Mayberry during the voir dire of prospective jurors referred to the proceeding as a "kangaroo court." Judge WEINROTT, pursuant to the Act of June 16, 1836, P. L. 784, §23, 17 P.S. 2041, found that this conduct was so offensive to the administration of Justice that conviction and sentence was appropriate and justified. We agree.

The Act of 1836, supra, in §2041 provides: "The power of the several courts of this commonwealth to

issue attachments and to *inflict summary punishments\**
for contempts of court shall be restricted to the following cases, to wit: . . . III. To the misbehavior of
any person *in the presence of the court\**, thereby obstructing the administration of justice. . . ."

The statute further provides, in §2042: "The punishment of imprisonment for contempt as aforesaid shall
extend . . . to such contempts as shall be committed
in open court, and *all other contempts shall be punished
by fine only."\**

. Defendant contends (1) that he was entitled to a
trial by jury under (a) the Constitution of the United
States and (b) under the Constitution of Pennsylvania,
and (2) that the Pennsylvania direct contempt statute,
supra, violates the Federal and State guarantees of
due process of law. There is no merit in any of defendant's contentions. *Brocker v. Brocker,* 429 Pa.
513, 241 A. 2d 336; *Knaus v. Knaus,* 387 Pa. 370, 127
A. 2d 669; *Mack Appeal,* 386 Pa. 251, 258, 126 A. 2d
679; *Levine Contempt Case,* 372 Pa. 612, 95 A. 2d 222;
*Philadelphia Marine Trade Association v. International
Longshoremen's Association,* 392 Pa. 500, 140 A. 2d
814; *Green v. United States,* 356 U. S. 165; *Sacher
v. United States,* 343 U.S. 1; *United States v. United
Mine Workers of America,* 330 U.S. 258; *Fisher v.
Pace,* 336 U.S. 155, 159; *Michaelson v. United States,*
266 U.S. 42; *Ex Parte Terry,* 128 U.S. 289, 313.

We shall quote a few pertinent principles regarding
contempt of Court which were recently stated at great
length in *Brocker v. Brocker,* 429 Pa., supra. In
*Brocker v. Brocker,* the Court said (pages 519, 523):

. "The Courts have always possessed the inherent
power to enforce their Orders and Decrees by imposing penalties and sanctions for failure to obey or comply therewith. Commonwealth ex rel. Beghian v.
Beghian, 408 Pa. 408, 184 A. 2d 270; Knaus v. Knaus,

---

\* Italics, ours.

387 Pa. 370, 127 A. 2d 669; Michaelson v. United States, 266 U.S. 42; Green v. United States, 356 U.S. 165; United States v. United Mine Workers of America, 330 U.S. 258; Commonwealth v. Perkins, 124 Pa. 36, 16 Atl. 525; Penn Anthracite Mining Co. v. Anthracite Miners of Pennsylvania, 114 Pa. Superior Ct. 7, 174 Atl. 11; Commonwealth v. Sheasley, 102 Pa. Superior Ct. 384, 157 Atl. 27.

"Contempt is divided legally into two classes: (1) Civil Contempt and (2) Criminal Contempt, (a) direct contempt and (b) indirect contempt. Knaus v. Knaus, 387 Pa., supra; Philadelphia Marine Trade Assn. v. International Longshoremen's Assn., 392 Pa. 500, 140 A. 2d 814; Commonwealth ex rel. Beghian v. Beghian, 408 Pa., supra; Marco Industries, Inc. v. United Steelworkers of America, 401 Pa. 299, 164 A. 2d 205.

"*The dominant purpose* and objectives of the Court's Order is the *controlling** factor in the determination of whether the contempt was civil or criminal. Not only is the dividing line between civil and criminal contempt sometimes shadowy or obscure, but the same facts or conduct may constitute or amount to both civil and criminal contempt. United States v. United Mine Workers of America, 330 U.S., supra. . . .

"In Knaus v. Knaus, 387 Pa., supra, the Court said (page 375): 'A direct criminal contempt consists of misconduct of a person in the presence of the court, or so near thereto to interfere with its immediate business, and punishment for such contempts may be inflicted summarily: Act of June 16, 1836, P.L. 784, §§23, 24, 17 P.S. §§2041, 2042; Levine Contempt Case, 372 Pa. 612, 95 A. 2d 222; Snyder's Case, 301 Pa. 276, 152 A. 33. An indirect criminal contempt consists of the violation of an order or decree of a court which occurs outside the presence of the court: Penn Anthra-

---

* Italics in original Opinion.

cite Mining Co. v. Anthracite Miners of Pennsylvania et al., 318 Pa. 401, 178 A. 291; Kegg et al. v. Bianco et al., 151 Pa. Superior Ct. 234, 30 A. 2d 159. . . .' "

In *Levine Contempt Case*, 372 Pa., supra, the Court pertinently said (page 618):

"Generally speaking, one is guilty of contempt when his conduct tends to bring the authority and administration of the law into disrespect. The right to punish for such contempt is inherent in all courts. When it is committed in its presence the court may, in punishing the offender, act of its own knowledge without further process, proof, or examination. Such power, 'although arbitrary in its nature and liable to abuse, is absolutely essential to the protection of the courts in the discharge of their functions': Ex Parte Terry, 128 U.S. 289, 313. It is a power 'essential to preserve their authority and to prevent the administration of justice from falling into disrepute': Fisher v. Pace, 336 U.S. 155, 159. The Act of June 16, 1836, P. L. 784, §23, recognizes 'the power of the several courts of this commonwealth . . . to inflict *summary**punishments for contempts of court' in cases, inter alia, of 'the misbehavior of any person in the presence of the court, thereby obstructing the administration of justice.' "

In *Weiss v. Jacobs*, 405 Pa. 390, 175 A. 2d 849, this Court, quoting from *In Re Oliver*, 333 U.S. 257, said (page 394-395): " '. . . due process of law, . . . requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf either by way of defense or explanation. The narrow exception to these due process requirements includes

---

* Italics, ours.

only charges of misconduct, in open court, in the presence of the Judge, which disturbs the Court's business, where all of the essential elements of the misconduct are under the eye of the court. . . . and where immediate punishment is essential to prevent "demoralization of the Court's authority" before the public. . . .' "

The record in the instant case establishes, without the slightest doubt, Mayberry's flagrant, unjustifiable and contemptuous abuse of the trial Judge in open Court and the cases hold that such direct criminal contempt may be punished summarily.

Appellant argues, however, that (1) Article I, §6, of the Constitution of Pennsylvania of 1874, and (2) several provisions and amendments of the Constitution of the United States, and (3) two recent decisions of the Supreme Court of the United States—*Bloom v. Illinois,* 391 U.S. 194 (1968), and *Duncan v. Louisiana,* 391 U.S. 145—entitle him to a trial by jury.

Article I, §6, of the Constitution of Pennsylvania provides: "Trial by jury shall be as heretofore, and the right thereof remain inviolate." Prior to the adoption of the Constitution of Pennsylvania a person guilty of contempt in open Court was never entitled to a jury trial for such contempt, and consequently neither the Pennsylvania Constitution nor any statute was "violated" by a Court finding a person guilty of *direct contempt of Court and punishing him summarily without a jury trial.*

Article III, §2, of the Constitution of the United States provides: "The Trial of all Crimes, except in Cases of Impeachment, shall be by jury; and such Trial shall be held in the State where the said Crimes shall have been committed; . . ."

The recent cases of *Bloom* and *Duncan,* supra, and *DeStefano v. Woods,* 392 U.S. 631, 36 L. W. 3479 (1968), have radically changed the law. They hold

that the right to a trial by jury exists whenever (a) a person is accused of a crime or of an offense, including an indirect criminal contempt of Court, and (b) the punishment imposable showed it was a serious and not a petty offense or crime. The Court held that contempt of Court was a crime but did not define the distinction between a serious crime and a petty crime. However, it did say that a crime punishable by six months' imprisonment or less was "petty," and a crime punishable by two years in prison was "serious" and entitled the accused to a jury trial.*

In *DeStefano v. Woods,* supra, petitioner was tried by the State of Illinois for illegally voting. During the trial, petitioner was held in contempt on three separate occasions for his verbal outbursts which disturbed the proceedings, after being instructed to keep quiet and allow his attorney to represent him. A sentence of one year was imposed for each of the three contempt violations. The Supreme Court of the United States did not discuss the question of whether there could be a summary conviction for direct criminal contempt but affirmed on the ground that the *Bloom* decision should receive only prospective application. The Court said (page 632): "In Duncan v. Louisiana, 391 U.S. 145 (1968), we held that the States cannot deny a request for jury trial in serious criminal cases, [Assault and Battery] and in Bloom v. Illinois, 391 U.S. 194 (1968), that *the right to jury trial extends to trials for serious criminal contempts.** . . . Both Duncan and Bloom left open the question whether a contempt punished by imprisonment for one year is, by virtue of that sentence, a sufficiently serious matter to require that a request for jury trial be honored."

---

* In *Duncan v. Louisiana,* 391 U.S., supra, Mr. Justice HARLAN, dissenting, said (pages 172-173): ". . . [the opinion] holds, for some reason not apparent to me. . . . [T]he Court's approach and its reading of history are altogether topsy-turvy."

*Bloom v. Illinois,* 391 U.S. 194, 36 L.W. 4429, was an *indirect* criminal contempt of Court arising from the defendant's conduct in drawing and probating a fake or forged will. The Court pertinently said (page 201) : "Criminal contempt is a crime in the ordinary sense; it is a violation of the law, a public wrong which is punishable by fine or imprisonment or both. . . .

"Given that *criminal contempt is a crime in every fundamental respect\*,* the question is whether it is a crime to which the jury trial provisions of the Constitution apply. We hold that it is, primarily because in terms of those considerations which make the right to jury trial fundamental in criminal cases, there is no substantial difference between serious contempts and other serious crimes. . . . Even when the contempt is not a direct insult to the court or the judge, it frequently represents a rejection of judicial authority, or an interference with the judicial process or with the duties of officers of the court."

We further note that in the very recent case, *Frank v. United States,* 395 U.S. 147, 5 Cr. L. 3069 (1969), the Court held that a suspended sentence with probation for three years did not entitle a defendant to a jury trial, and said, inter alia: "The Sixth Amendment to the Constitution gives defendants a right to a trial by jury in 'all criminal prosecutions.' However, it has long been the rule that so-called 'petty' offenses may be tried without a jury. See, e.g., District of Columbia v. Clawans, 300 U.S. 617 (1937). For purposes of the right to trial by jury, criminal contempt is treated just like all other criminal offenses. The defendant is entitled to a jury trial unless the particular offense can be classified as 'petty.' Dyke v. Taylor Implement Mfg. Co., 391 U.S. 216 (1968) ; Bloom v. Illinois, 391 U.S. 194 (1968) ; Cheff v. Schnackenberg, 384 U.S. 373 (1966). . . . Recently, we held that a jury trial

---

* Italics, ours.

was required in a state prosecution for simple battery, an offense carrying a possible prison sentence of two years. Duncan v. Louisiana, 391 U.S. 145 (1968).

"In ordinary criminal prosecutions, the severity of the penalty authorized, not the penalty actually imposed, is the relevant criterion."

We believe the above mentioned cases apply to indirect and not to direct criminal contempt in the presence of the Court, and the Court did not reverse or distinguish or even discuss its prior decisions which had approved summary punishment for direct contempt of Court. To require a jury trial in cases of direct contempt would encourage disobedience to the law, harmfully disrupt and delay trials, often interfere with the orderly and speedy administration of Justice, would substantially reduce the respect and esteem of the people for all Courts and for Judicial authority and would at times make a mockery of Justice.

Defendant claims he is within the language and decisions of *Bloom* and *Duncan*. However, he overlooks, inter alia, the important fact that *DeStefano v. Woods*, 36 U.S.L.W., supra (June 17, 1968), held that the decisions in *Bloom* and *Duncan* "should receive only prospective application." Since Mayberry's trial and his contempt of Court occurred in 1965, he is, as the majority Opinion correctly states, not entitled to rely in any way upon the *Bloom* or the *Duncan* decision.

To summarize: (1) Pennsylvania's direct contempt statute which permits *summary* punishment for contemptuous conduct in open Court is applicable in this case; (2) the record clearly establishes defendant's flagrant misbehavior and contempt of Court in open Court; and (3) defendant is not entitled to a jury trial either under the Federal Constitution or under the Constitution of Pennsylvania, or under any statute, or under any Court decision.

I concur in judgment of sentences affirmed.