**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Richard McMULLEN, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 28, 2005.

Filed July 6, 2005.

Reargument Denied Sept. 14, 2005.

Karl Baker, Public Defender, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before: TODD, MONTEMURO * and POPOVICH, JJ.

OPINION BY POPOVICH, J.:

¶ 1 Appellant Richard McMullen appeals the judgment of sentence (aggregating 17 months and 18 days to 35 months and 24 days) for six counts of indirect criminal contempt on the basis that the sentence is illegal. We reverse.

¶ 2 The facts of record establish the following, as herein relevant: On October 23, 2001, Appellant pleaded guilty to stalking, terroristic threats, harassment by communication, and harassment. He was sentenced to 11½ to 23 months incarceration with immediate parole to passive house arrest, which was to be followed by 2 years reporting probation. Further, the trial court issued a "stay away" order prohibiting Appellant from contacting or intimidating the complainant.

¶ 3 During the probationary period, a violation hearing was conducted. The complainant testified that on August 13, 2002, Appellant phoned and stated he was going to kill her by the end of the year. The complainant contacted the probation officer regarding the threat. The trial court, once informed of such events, issued a bench warrant and directed the probation office to detain Appellant, but this proved fruitless because his whereabouts were unknown. However, after a series of phone calls to the complainant in June of 2003, Appellant was arrested by the sheriff's office in Broward County, Florida, and extradited to Pennsylvania on July 22, 2003.

¶ 4 On August 20, 2003, a probation violation hearing was held, during which the complainant, the probation officer, and Appellant testified. As a result, the trial court revoked Appellant's probation, terminated his parole, and re-sentenced him accordingly: stalking (2½ to 5 years imprisonment); terroristic threats (2 ½ to 5 years imprisonment, to be served concurrently with the stalking sentence); harassment by communication (6 to 12 months imprisonment, to be served consecutively with the preceding two sentences); and harassment (no penalty). The trial court also found Appellant guilty of six counts of contempt: one for fleeing the jurisdiction and five for violating the "stay away" order, specifically, telephone contacts Appellant made to the complainant. For each

* Retired Justice assigned to Superior Court.

contempt count, Appellant was sentenced to consecutive prison terms of 2 months, 28 days to 5 months, 29 days. Trial court opinion, 6/11/04, at 7. This appeal ensued,[1] and Appellant responded to the trial court's Pa.R.A.P.1925(b) statement by raising three issues, the first of which reads:

> Were not six consecutive terms of two months, twenty-eight days to five months, twenty-nine days illegal as the sentences exceed the statutory maximum for indirect criminal contempt in violation of [A]ppellant's right to due process under the United States and Pennsylvania Constitutions?

*See* Appellant's brief, at 3.[2]

¶ 5 In advance of responding to Appellant's claims, we wish to reference the difference between the various types of contempt:

> The classification of contempt has vexed our courts. A proper classification is crucial however, since upon it depends the procedures which must be followed in disposing of it. D. Dobbs, Handbook on the Law of Remedies section 2.9 (1973).

> Contempt of court is the obstruction of the court's orderly process. It may be committed directly or indirectly. It is direct when committed in the court's presence and indirect when committed beyond its presence. Contempt is a generic concept, distinguished by two types, criminal and civil contempt. The difference is not the essence, but of the purpose sought by their use. The grav[a]men of both is obstruction of orderly process, and each serves a different purpose for regulating obstruction.

> Direct contempt is obstruction by conduct, word or deed, in the presence of the court and is a summary offense. It may be sanctioned as civil or criminal contempt depending upon the purposes sought by the court. It is summary because its proofs are evident; the authority and orderly process of the court are directly confronted upon its open record and the evidence is plain and usually self-accusing.

> Indirect contempt is obstructive conduct committed beyond the court's presence. Such conduct is not self-evident or self-accusatory as when one refuses in the court's presence to do a thing, and proof of its commission is required. Therein lies the main difference between contempt in the court's presence and conduct beyond. When one is charged with indirect contempt, those charging such contempt are put to the usual proofs required to convict for any charge, including the right to trial by jury. This is so because the court has no direct, immediate proof of something beyond its immediate view. *See* 42 Pa. C.S. section 4136, *supra*.

> A finding of criminal contempt is a finding of a specific offense for which a sanction is imposed that does not seek compliance but is a specific punishment for an act done. In criminal contempt one has committed an act that in itself calls for specific sanction and when imposed cannot be obviated because it is a completed offense.

---

1. As told by Appellant, "due to counsel's error, [he] failed to timely appeal his convictions for contempt. Subsequently his appellate rights were reinstated through a timely filed Post Conviction Relief Act petition. Appellant then timely filed an appeal from that ruling." *See* Appellant's brief, at 5.

2. Originally, Appellant raised five issues in his May 18, 2004, Rule 1925(b) statement filed with the criminal appeals unit of the Court of Common Pleas of Philadelphia County, but that number was reduced to the three issues raised now on appeal.

Civil contempt is also an available remedy for obstruction in the presence of the court and may be used to compel obedience by imposing fine or imprisonment conditioned on obedience to the court's order. The difference is best explained in Court house parlance: in civil contempt one has "the key to the jail house." That is, he may be released of sanction whenever he signals that he will obey the order.

We have said this before:

There is nothing inherent in a contemptuous act or refusal to act which classifies that act as "criminal" or "civil". The distinction between civil and criminal contempt is rather a distinction between two possible judicial responses to contumacious behavior. For example, it is clear that a contemptuous refusal to testify before a grand jury may be dealt with either a(sic) criminal contempt, civil contempt, or both.

These judicial responses are classified according to the dominant purpose of the court. If the dominant purpose is to prospectively coerce the contemnor to comply with an order of the court, the adjudication of contempt is civil. If, however, the dominant purpose is to punish the contemnor for disobedience of the court's order or some other contemptuous act, the adjudication of contempt is criminal.

Dominant purpose of coercion or punishment is expressed in the sanction imposed. A civil adjudication of contempt coerces with a conditional or indeterminate sentence of which the contemnor may relieve himself of obeying the court's order, while a criminal adjudication of contempt punishes with a certain term of imprisonment or a fine which the contemnor is powerless to escape by compliance.

The civil-criminal classification of contempt exists solely for determination of a contemnor's procedural rights and a court's sentencing options. Quite simply, a contemnor who will be sentenced to a determinate term of imprisonment or a fixed fine, which he is powerless to escape by purging himself of his contempt, is entitled to the essential procedural safeguards that attend criminal proceedings generally. Second, a court is not permitted to impose a coercive sentence conditioned on the contemnor's performance of some act that is incapable of performance.

*Crozer–Chester Medical Center v. Moran,* 522 Pa. 124, 130–32, 560 A.2d 133, 136–37 (1989).

██ ¶ 6 The logic behind Appellant's first claim hinges upon the argument that because his contemptuous behavior was not committed in open court, his six contempt findings (five for contacting the complainant and one for leaving the jurisdiction) were punishable by fine only, and in support thereof, he cites 42 Pa.C.S.A. § 4133, which states:

Except as otherwise provided by statute, the punishment of commitment for contempt provided in section 4132 (relating to attachment and summary punishment for contempts) shall extend only to contempts committed in open court. All other contempts shall be punished by fine only.

Section 4133 contains a caveat, *i.e.,* the "fine only" punishment applies to contempts committed outside the purview of the court, "[e]xcept as otherwise provided by statute[.]" Such "otherwise provided by statute" exists in the form of 42 Pa. C.S.A. § 4136, which provides, in relevant part:

## § 4136. Rights of person charged with certain indirect criminal contempts

(a) GENERAL RULE.—A person charged with indirect criminal contempt for violation of a restraining order or injunction issued by a court shall enjoy:

(1) The rights to bail that are accorded to person accused of crime.

(2) The right to be notified of the accusation and a reasonable time to make a defense, if the alleged contempt is not committed in the immediate view or presence of the court.

(3) (i) Upon demand, the right to a speedy and public trial by an impartial jury of the judicial district wherein the contempt is alleged to have been committed.

(ii) The requirement of subparagraph (I) shall not be construed to apply to contempts:

(B) Committed in the presence of the court or so near thereto as to interfere directly with the administration of justice, or to apply to the misbehavior, misconduct, or disobedience of any officer of the court in respect to the writs, orders, or process of the court.

(C) Subject to 23 Pa.C.S. § 6114 (relating to contempt for violation of order of agreement).

(D) Subject to 75 Pa.C.S. § 4108(c) (relating to non-jury criminal contempt proceedings).

\*　　\*　　\*　　\*　　\*　　\*

(b) PUNISHMENT.—Except as otherwise provided in this title or by statute hereafter enacted, punishment for a contempt specified in subsection (a) may be by fine not exceeding $100 or by imprisonment not exceeding 15 days in the jail of the county where the court is sitting, or both, in the discretion of the court. Where a person is committed to jail for the nonpayment of such a fine, he shall be discharged at the expiration of 15 days, but where he is also committed for a definite time, the 15 days shall be computed from the expiration of the definite time.

42 Pa.C.S.A. § 4136.

■■■ ¶ 7 It is undisputed that Appellant's behavior comports with indirect criminal contempt,[3] and the preclusion of any contact between the complainant and

---

**3.** *See Commonwealth v. Ashton (In re Donahue)*, 824 A.2d 1198, 1203 ("The behavior at issue in the present matter did not occur 'in the presence of the court' and the matter cannot be deemed to implicate a direct criminal contempt. The trial court, in fact, specifically found Appellant to be in indirect criminal contempt.'"); *see also Kegg v. Bianco*, 151 Pa.Super. 234, 30 A.2d 159 (1943) ("It must be conceded that the contempt was *indirect* since [it was] 'committed not in the presence of the court or so near thereto as to interfere directly with the administration of justice.'" (emphasis in original; citation omitted)). This conclusion is buttressed by the trial court's opinion in which it states, "the sentence of total confinement was necessary to vindicate the authority of the court." *See* Trial court opinion, 6/11/04, at 17. *see also id.* at 18 ("[T]he sentence of total con-

finement was necessary to vindicate the authority of the court after Appellant failed to adhere to his parole and probation requirements [. . .]."). The dominant purpose and objective of the trial court's order is the controlling factor in determining whether a contempt is civil or criminal. *In re Martorano*, 464 Pa. 66, 78 346 A.2d 22, 28 (1975). If the court's purpose is to vindicate the dignity and authority of the trial court, to protect the interest of the general public, and the sanction imposed is designed to punish the contemnor, then the citation is one for criminal contempt. *Commonwealth v. Charlett*, 481 Pa. 22, 27–28, 391 A.2d 1296, 1298–99 (1978). In light of the preceding principles, and the observations of the trial court, the contempt citations herein must be considered criminal in nature.

Appellant was recited in the trial court's "protective" order, which provides:

AND NOW, [to-]wit, this 5th day of December 2001, it is ORDERED AND DECREED that a PROTECTIVE ORDER is entered under 18 P.S. Section 4954[4] on behalf of [complainant,] family and friends.

IT IS HEREBY ORDERED that the [Appellant] [...] is prohibited from contacting or intimidating the above-mentioned person(s) either personally or by family, friends, acquaintances, or agents, and that the [Appellant] have no communication whatsoever, directly or indirectly, with the person(s) above-named except through an attorney for the period of one year 12/5/01 through 12/5/04[.]

Violation of this ORDER carries the following penalties under 18 P.S. Section 4955:

1. You may be arrested for intimidation of witnesses or victims and/or retaliation against witnesses or victim, a felony charge.

2. You may be held in contempt by this Court.

3. These penalties may be imposed whether the violation complained of has been committed by you personally or caused or encouraged by you.

/s/ A. M. Rizzo

J.

DATE ENTERED:        12/5/01

This ORDER has been made a condition of your probation and/or parole. If you violate this order, your probation or parole may be revoked.

*See* CP# 0106-0670 1/1.

¶ 8 Contravention of the December 5th order carried with it a punitive side: one could be arrested and charged with a felony for intimidation of a victim *via* the Crimes Code or held in contempt of court.[5] Herein, for telephonic communication with the complainant and leaving

---

4. Section 4954 reads as follows:
   **CHAPTER 49–FALSIFICATION AND INTIMIDATION**
   **Subchapter B. VICTIM AND WITNESS INTIMIDATION**
   **§ 4954. Protective Orders**
   Any court with jurisdiction over any criminal matter may, after a hearing and in its discretion, upon substantial evidence, which may include hearsay or the declaration of the prosecutor that a witness or victim has been intimidated or is reasonably likely to be intimidated, issue protective orders, including, but not limited to, the following:
   An order that a defendant not violate any provision of this subchapter or section 2790 (relating to harassment and stalking).
   An order that a person other than the defendant, including, but not limited to, a subpoenaed witness, not violate any provision of this subchapter.
   An order that any person described in paragraph (1) or (2) maintain a prescribed geographic distance from any specified witness or victim.
   An order that any person described in paragraph (1) or (2) have no communication whatsoever with any specified witness or victim, except through an attorney under such reasonable restrictions as the court may imposed.
   18 Pa.C.S.A. § 4954. Section 4954 applies to Appellant's case because he pleaded guilty to criminal offenses, which brings into play the proscriptive nature of the statute to constrict Appellant's behavior toward the victim.

5. We find the use of the disjunctive "or" is appropriate in this context because an act violative of the order (arising out of a single episode) would permit but a single punishment, *i.e.*, arrest and felony charge or contempt of court—not both proscriptive actions. The singularity of the act proscribed allowed for one punishment. Engaging in a series of independent acts would expose an accused to multiple punishments, as was the case here with Appellant's phoning of the complainant on five occasions and leaving the jurisdiction in contravention of the December 5, 2001, order. *See* Appellant's brief, at 4–5.

the jurisdiction without permission, Appellant was held in contempt of court. Consistent with the December 5th order, the trial court was authorized to impose a fine and/or imprisonment for Appellant's conduct, but no mention is made of the term of imprisonment permitted by the December 5th order for violation of the same. We look to Section 4136 for the penalty phase of Appellant's case, which specifically prescribes a jail term not to exceed 15 days for behavior rising to the level of indirect criminal contempt. *See* 42 Pa. C.S.A. § 4136(b) ("punishment for a contempt specified in subsection (a)[—indirect criminal contempt for violation of a restraining order issued by court—]may be [. . .] imprisonment not exceeding 15 days in the jail of the county where the court is sitting [. . .].").

¶ 9 Appellant argues his sentence of 2 months, 28 days to 5 months, 29 days for each of the six contempt convictions is at odds with the "fine only" sentence permitted by Section 4133, *supra.* We disagree with Appellant that a "fine only" could be imposed for violating the December 5th protective order. On the contrary, we hold a jail term of up to 15 days could be imposed for each of the indirect criminal contempt convictions pursuant to Section 4136, which, of necessity, renders illegal the maximum sentence of 6 months less one day for each of the six indirect criminal contempt convictions. *Cf. L & J Equipment Co. v. United Mine Workers of America,* 339 Pa.Super. 51, 488 A.2d 303, 307 n. 1 (1985) ("Consequently it now appears that [the] sentence is erroneous and under the provisions of 42 Pa.C.S.A. [§ ] 413[6,] the punishment must be limited to a maximum of 15 days. This determination is more firmly persuaded by the case

of *In re Martorano,* [464 Pa. 66,] 346 A.2d 22 [ (1975).] Thus, as to the sentence of [not less than one month or more than six months in the Greene County jail for Appellant's indirect criminal contempt for violating a court injunction,] it is excessive and must be modified [upon remand.]").

¶ 10 Next, we respond to Appellant's second claim that the aggregate sentence for contempt having exceeded six months renders it illegal and, his right to a jury trial having never been waived, entitles him to a vacation of the sentence and a remand for a trial by jury.[6] We have already discussed *supra* Appellant's contention that the aggregate punishment for the six criminal contempt convictions necessitates a vacation of the sentence, but the right to a jury trial in a contempt context has yet to be resolved. We take our direction from the decision of this Court in *L & J Equipment Co., supra,* wherein we reversed the indirect criminal contempt finding by the trial court and vacated the sentence (one to six months imprisonment) for a union and its member violating an injunction against use or threat of force on picket lines and preventing ingress to and egress from the worksite. We agreed with the appellants that, *inter alia,* the contempt proceedings were indirect criminal in nature, entitled the contemnors to notice of the accusations, and availed them the right to demand a jury trial in accordance with 42 Pa.C.S.A. § 4136(a). In the course of doing so, we wrote, as herein germane:

Since the proceedings in the trial court were in the nature of indirect criminal contempt, [A]ppellants were necessarily entitled to the rights specified in Section 4136, including the right to admission to bail, the right to be notified of the accu-

---

6. This issue was raised in the first paragraph of Appellant's Pa.R.A.P.1925(b) statement dated May 18, 2004, which renders the Commonwealth's waiver argument as to this issue specious.

sations against them, and upon demand, the right to a trial by jury. Moreover, the trial judge recognized in his opinion, the punishment for the indirect criminal contempt of the court's injunction should not have exceeded the maximums set forth in § 4136(b).

Appellee concedes that the sentences imposed by the trial court were illegal. Appellee argues, however, that the procedural safeguards outlined in Section 4136(a) were substantially satisfied in this case. Thus, [A]ppellee maintains that the contempt citation should be affirmed and the sentence amended to comply with Section 4136(b). We do not agree.

Although [A]ppellants did not demand a jury trial in this case, it is clear that they were not advised at any time prior to the contempt adjudication that the proceedings were in the nature of indirect criminal contempt. *Compare Marco Industries, Inc. v. United Steel Workers of America, supra*[401 Pa. 299, 164 A.2d 205 (1960)] (trial court held, prior to trial, that the contempt alleged in the petitions filed by both parties was an indirect criminal contempt; accordingly, the court directed that respondents were to be afforded a jury trial). The petitions charging the [Appellant] with contempt requested only that certain employees and members of the [Appellant] be barred from participating in picketing at the L & J worksite. The trial judge never characterized the proceedings nor did the parties; in fact, the trial judge operated under the assumption that the contempt was civil in nature. The alleged contemnors were unaware that they might be sentenced to determinate terms of imprisonment or fixed fines which they could not escape by purging themselves of the content. *See In re Martorano,* 464 Pa. at 78–80, 346 A.2d at 28–29. Under these circumstances,

[A]ppellants were entitled to an explanation of the nature of the proceedings and the opportunity to demand a trial by jury, in accordance with 42 Pa.Cons. Stat. § 4136(a). *Commonwealth v. Charlett,* 481 Pa. at 28–29, 391 A.2d at 1298–1300.

Accordingly, we reverse the court's Order and vacate the sentences imposed incident thereto. The case is remanded for further proceedings consistent with 42 Pa.Cons.Stat. § 4136. Jurisdiction is relinquished.

*L & J Equipment Co.,* 488 A.2d at 307.

¶ 11 We have read the transcript of the hearing held on August 20, 2003. There is no indication that Appellant was advised in advance of or during the hearing that the five unlawful phone communications with the victim and fleeing the jurisdiction were being treated as potential indirect criminal contempt violations, and the concomitant right to a jury trial associated therewith. *See* N.T., Probation Violation Hearing, 8/20/03, at 5–44. There was also no indication that the extradition papers sent to Florida revealed the nature of the hearing. In like fashion, neither the trial court nor the Commonwealth point to anything in the record indicating that Appellant was informed in advance of the August 20, 2003, hearing that it would address the contempt nature of the charges originating out of the unlawful communication telephonically with the victim and leaving the jurisdiction.

¶ 12 Appellant was entitled to an explanation of the nature of the proceedings in Pennsylvania for which he had been extradited, and he was not advised of a right to a trial by jury consistent with Section 4136(a). Thus, Appellant could not exercise his right to "demand" a jury trial for the contempt charges if he were not placed on notice of the same. *See L & J Equip-*

*ment Co., supra; cf. Schnabel Associates, Inc. v. Building & Constr. Trades Council,* 338 Pa.Super. 376, 487 A.2d 1327, 1333 (1985) ("[E]ven if the proceedings were viewed as indirect civil contempt, the defendants were not afforded trial by jury, which they had timely demanded[.]"). On remand, this procedural deficiency shall be rectified to avail Appellant the option to proceed with a jury in resolving his contempt violations.

¶ 13 Lastly, we turn to Appellant's contention that:

> The trial court erred in sentencing Appellant to five consecutive terms of two months, twenty-eight days to five months, twenty-nine days for contempt for violating a protective order where the order was ambiguous as to its period, at one point indicating the order was to extend for one year and, at another, three years, in violation of the due process provisions of the United States and Pennsylvania Constitutions.

*See* Appellant's brief, at 14.[7]

> *"A conviction of contempt for violation of a court order can be sustained only if the order or decree was 'definite, clear, specific and left no doubt or uncertainty' in the mind of the person to whom it was addressed of the conduct prohibited.* The long-standing salutary rule in contempt cases is that ambiguities and omissions in orders redound to the benefit of the person charged with contempt.' "

*Commonwealth v. Garrison,* 478 Pa. 356, 368–69, 386 A.2d 971, 977 (1978) (citations omitted; emphasis added).

¶ 14 There is no doubt that the "conduct prohibited" by the trial court's December 5, 2001, protective order was outlined with specificity so as to place Appellant on notice that having any contact (direct or indirect) with the complainant could result in some form of penalization, in the nature of an arrest and/or citation for contempt, for violating the trial court's protective order. The only ambivalence Appellant could have harbored would have been the duration of the protective order, which stated in stark, ambiguous language its existence "for the period of one year *12/5/01* through *12/5/04.*" The underscored dates were inserted by the trial court, and their juxtaposition to the typed words of "one year" is an obvious contradiction in terms regarding the length of time the protective order would remain in effect, *i.e.,* 1 year or 3 years. Yet, Appellant did not take the initiative to seek clarification of the blatant inconsistency in the language contained in the protective order as to its longevity.

¶ 15 In a Juvenile Act context, this Court decided that a director of a child welfare agency could not be held in contempt for failing to provide a child-resident treatment and, in the course thereof, made

---

7. More specifically, Appellant elaborates upon this "ambiguity" sentencing argument by asserting that he cannot be found guilty of violating "four of the five telephone contacts. [...] The [...] contacts [...] cannot support a finding of contempt. Under [*Commonwealth v.*] *Baker* [, 564 Pa. 192, 766 A.2d 328 (2001),] before a sanction may be imposed there can be 'no doubt' that the conduct violates the order. Such cannot be said here. Judgment of sentence [...] must be reversed." *See* Appellant's brief, at 16. We read Appellant's claim to be an assault upon the *legality of the* convictions for phoning the complainant in violation of the December 5th order, and not the *illegality of the sentence. See* Exhibit B of Appellant's brief, at Statement of Matters Complained of on Appeal, Point 2: "The evidence was insufficient to find a violation of probation based on the breach of an expired order." Here, a challenge to the sufficiency of the evidence to sustain the convictions was raised below in response to the trial court's Pa.R.A.P.1925(b) statement and, as such, is reviewable. *See Commonwealth v. Lord,* 553 Pa. 415, 719 A.2d 306 (1998).

some observations relevant to the case here; to-wit:

McIntyre was the facility most commonly used by CWS for the temporary placement of deprived children. The mere recitation in the order that [A]ppellee had previously run away from McIntyre and that she appeared to be retarded did not by itself provide sufficient guidance to [A]ppellant as to what a "suitable shelter" might be.

To be sure, the lower court is correct when it says that "[t]he record is bare of any mention of an attempt by anyone from CWS to obtain clarification, construction or modification of the Order." (Opinion at 72a.) In *McComb v. Jacksonville Paper Co.*, supra at 187[69 S.Ct. 497, 93 L.Ed. 599 (1949)], a decree required the respondents to comply with specific minimum wage, overtime, and record keeping provisions of the Fair Labor Standards Act. Although the decree itself was general, it enjoined violations of those specific requirements. The Court said:

"Decrees of that generality are often necessary to prevent further violations where a proclivity for unlawful conduct has been shown .... Yet if there were extenuating circumstances .... [r]espondents could have petitioned the District Court for a modification, clarification or construction of the order .... But respondents did not take that course either .... They knew they acted at their peril. For they were alerted by the decree against any violation of specified provisions of the Act." 336 U.S. at 192, 69 S.Ct. 497.

Here, however, [A]ppellant was not so alerted. The order referred to no provision of the Juvenile Act, and enjoined no specific violations. In fact, the lower court left the interpretation of the order

to the discretion of CWS. (Opinion at 17a, *supra.*) Having failed to provide adequate guidelines as to what it expected of CWS, the court should not have held [A]ppellant in contempt for exercising the very discretion that the court assumed he would exercise.

*Janet D. v. Carros*, 240 Pa.Super. 291, 362 A.2d 1060, 1078–79 (1976).

¶ 16 At bar, Appellant was alerted to the behavior proscribed (no communication, either directly or indirectly, involving the complainant) by the December 5, 2001, protective order. The only ambiguity in the "stay away" order concerns its duration, which is patently obvious to anyone reading the document. As for the conduct prohibited by the December 5th order, Appellant admitted phoning from Florida—communications tape-recorded by the complainant and played in court without objection by Appellant. *See* N.T., Violation of Probation Volume 1, 8/20/03, at 23–24 ("Your Honor, as you can infer from the tape there, I was really bad. You know, I didn't mean to call her like that, but I was down in Florida, I was living alone, I know it looks bad[, ...] but I am willing to take responsibility for it.").

¶ 17 If there were any concerns regarding the longevity of the December 5th order, as recommended by the United States Supreme Court in *McComb, supra,* Appellant "could have petitioned the [...] Court for a modification, clarification or construction of the order." *See Commonwealth v. Klein*, 566 Pa. 396, 400, 781 A.2d 1133, 1134 (2001) ("[C]ourt concluded that the lower court had an inherent power to correct obvious and patent mistakes beyond the expiration of the thirty-day statutory limit. Thus, under limited circumstances, even where the court would normally be divested of jurisdiction, a court may have the power to correct patent and obvious mistakes." (cita-

tion omitted)). Appellant took the road less traveled and sat idly by for 20 months (December 5, 2001, order and August 20, 2003, violation hearing) without seeking clarification of the December 5th order to eliminate any doubt as to its duration. Appellant knew he was acting at his peril, and he did nothing to ameliorate the situation. We will not condone such indolence by granting Appellant a windfall in the form of reversing his contempt convictions with impunity.

¶ 18 Order of contempt reversed. Judgment of sentence vacated. Case remanded for proceedings consistent with this Opinion. Jurisdiction relinquished.